862 So.2d 1105 (2003)
Margaret FLUCK, et vir., Plaintiff-Appellant,
v.
Leslie R. COFFMAN, M.D., Defendant-Appellee.
No. 37,739-CA.
Court of Appeal of Louisiana, Second Circuit.
December 12, 2003.
*1106 John L. Hammons, Shreveport, Annis C. Flournoy, for Appellant.
David H. Nelson, Monroe, for Appellee.
Before WILLIAMS, CARAWAY and PEATROSS, JJ.
*1107 WILLIAMS, Judge.
The plaintiffs, Margaret Fluck and Jack Fluck, appeal a judgment in favor of the defendant, Leslie Coffman, M.D., dismissing their medical malpractice claim. The trial court found that the plaintiffs failed to prove that defendant breached the standard of care. For the following reasons, we affirm.

FACTS
On November 8, 1994, Margaret Fluck underwent bladder suspension surgery by Dr. Leslie Coffman, an obstetrician/gynecologist. During the surgical procedure, Dr. Coffman inadvertently passed a suture through the patient's catheter. Two days later, Bessie Herring, a registered nurse at Glenwood Regional Medical Center, was unable to remove the catheter and contacted Dr. Coffman, who went to see Fluck in the hospital.
At trial, the parties gave contrasting versions of the incident which had transpired. Dr. Coffman and Nurse Herring testified that he grasped the end of the catheter between his thumb and index finger and gently pulled once to try to remove the catheter. They both stated that the effort did not cause Fluck any pain and that they did not recall hearing the patient scream out in distress.
In contrast, Fluck testified that Dr. Coffman made multiple aggressive attempts to remove the sutured catheter and that his efforts caused her excruciating pain. Fluck testified that she screamed out in pain a number of times and that Coffman refused to discontinue his efforts even after she begged him to stop. Fluck's two sisters and her husband, Jack, each testified that they were standing in the hall outside the door of the examining room and heard Fluck scream in pain a number of times.
When Dr. Coffman concluded that the catheter must have been sutured into place, he consulted with Dr. Edwin Edgerton, a urologist, who removed the catheter the next day by performing a cystoscopy procedure. The nursing notes described bruises on Fluck's lower abdomen on the day following Dr. Coffman's attempts to remove the catheter.
Subsequently, the plaintiffs, Margaret and Jack Fluck, filed a complaint against Dr. Coffman with the Patient's Compensation Fund. A medical review panel issued a unanimous opinion finding that Dr. Coffman had not breached the applicable standard of care in his treatment of Fluck. The plaintiffs then filed a petition for damages against the defendant, Dr. Coffman, alleging that his negligence caused Fluck pain and suffering, mental anguish, sexual dysfunction and required further surgical intervention.
Initially, the district court granted defendant's motion for summary judgment, which was affirmed by this court. Fluck v. Coffman, 32,100 (La.App.2d Cir.9/22/99), 742 So.2d 79. The supreme court reversed and remanded after finding that a genuine issue of material fact existed. Fluck v. Coffman, 99-3054 (La.1/7/00), 752 So.2d 171. The parties entered a consent judgment limiting plaintiffs' claim to damages for the mistaken suturing of the catheter. After a bench trial, the court issued written reasons finding that the plaintiffs failed to establish that Dr. Coffman had breached the standard of care. The trial court rendered judgment dismissing the plaintiffs' claims. Plaintiffs appeal the judgment.

DISCUSSION
In two assignments of error, the plaintiffs contend the trial court erred in finding that they did not meet their burden of proving that the defendant was *1108 negligent. Plaintiffs argue that the testimony supported a finding that defendant used excessive force in attempting to remove the catheter, thereby causing unnecessary pain to Margaret Fluck.
In a malpractice action based on the negligence of a physician licensed in Louisiana, where the defendant practices in a specialty and the alleged acts of medical negligence raise issues peculiar to that specialty, the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within the same medical specialty. The plaintiff must also prove that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence in applying that skill, and that defendant's failure to exercise this degree of care caused plaintiff to suffer injuries that would not otherwise have occurred. LSA-R.S. 9:2794(A); Smith v. Lincoln General Hospital, 27,133 (La.App.2d Cir.6/21/95), 658 So.2d 256. The mere fact that an injury occurred does not raise a presumption that the physician was negligent. LSA-R.S. 9:2794(C).
A court of appeal should not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Dept. of Transp. & Development, 617 So.2d 880 (La.1993). The task of a reviewing court is to assess whether the fact finder's resolution of conflicting evidence was reasonable in light of the record as a whole. Fowler v. Wal-Mart Stores, Inc., 30,843 (La.App.2d Cir.8/19/98), 716 So.2d 511.
In the present case, Dr. Debora Murphy, a psychiatrist, testified that she first saw plaintiff in July 1995. After an initial evaluation, Dr. Murphy diagnosed plaintiff with a mood disorder due to surgical complications following bladder suspension surgery and ongoing medical problems. Dr. Murphy testified that plaintiff reported that the defendant had stitched in the catheter during bladder surgery, requiring a cystoscopy procedure to remove the suture. Dr. Murphy stated that regarding the catheter incident, plaintiff "felt she was being hurt" by defendant and she shouted because his act of pulling the catheter was so painful, but she said that defendant did not acknowledge he had caused her pain.
Nurse Herring testified that she attempted to remove the catheter by cutting the tube and draining the fluid from the catheter bulb, but it would not come out. Herring stated that she called the defendant and he instructed her to move the plaintiff to a treatment room and give her Valium. Herring testified that defendant first tried to push in the catheter to see if the bulb was stuck and then he "gently pulled" on the catheter, but he was unable to remove it and said that it must have been stitched in place. Herring did not recall hearing the plaintiff say anything, scream in pain or ask the defendant to stop in reaction to his efforts. According to Herring, the defendant could not have placed his hand on plaintiff's abdomen while pulling the catheter because he was sitting on a stool and plaintiff was in a raised examination chair with her body at his eye level. Herring testified that she did not notice any bruising on plaintiff's lower abdomen and did not see defendant do anything overly aggressive to plaintiff while trying to remove the catheter.
Two of plaintiff's sisters, Jane Smith and Diane Rizzo, testified that they were standing outside the treatment room door when defendant attempted to remove the catheter. Smith stated that after defendant entered the room, she heard plaintiff scream like a person in severe pain approximately three to five times and that plaintiff may have said "stop" or "don't." Rizzo testified that she had been in plaintiff's hospital room earlier when the nurse *1109 attempted to remove the catheter by gently pulling it and that plaintiff had winced in pain. Rizzo stated that while she was standing outside the treatment room, she heard plaintiff scream like someone in pain approximately seven or eight times and that she said "please stop."
The plaintiff's husband, Jack Fluck, testified that he was in the hall outside the treatment room when he heard a "yell of pain" and several more screams from his wife. Fluck stated that he was shocked by the event because he was not told that removal of the catheter would cause such pain.
Dr. Ralph Armstrong, an obstetrician/gynecologist, testified that he was a member of the medical review panel which found that the defendant did not deviate from the standard of care in the treatment of plaintiff. Dr. Armstrong stated that if a catheter does not come out immediately, it is appropriate for a physician to manipulate the catheter with a certain amount of light tugging to determine the problem. Dr. Armstrong testified that the fact that a patient screams in pain does not necessarily indicate the physician has acted negligently, since individual patients have different thresholds of pain tolerance. Dr. Armstrong stated that the type of suture used in plaintiff's procedure can pull out easily, so that sometimes "a little strong tug" can break the stitch and release the catheter. Armstrong testified that the bruising on plaintiff's lower abdomen was caused by the surgical incision and not by pulling on the catheter. Dr. Armstrong opined that in this case, the defendant did not use excessive force in manipulating the catheter because he did not break or pull out the suture.
The plaintiff testified that defendant performed the bladder suspension surgery on November 8, 1994. She stated that two days later, a nurse was unable to remove the catheter and moved her to an examination room. Plaintiff testified that defendant pressed down on her abdomen with one hand and pulled the catheter with the other. Plaintiff stated that after defendant pulled hard on the catheter several times causing her to scream in severe pain, he instructed the nurse to give her Valium through an IV. The plaintiff testified that defendant then resumed forcefully pulling the catheter several more times causing her pain, despite her screams and request that he stop. Plaintiff stated that after defendant's attempts to remove the catheter, there were bruises on her abdomen in the shape of a hand and that a nurse noted this bruising in the hospital chart. Plaintiff acknowledged that she saw defendant for follow-up examinations following the bladder surgery.
Dr. Michael Cage, who was accepted as an expert in urology, testified that suturing the catheter during a bladder suspension surgery was not a breach of the duty of care because the procedure requires the surgeon to work very closely to the urethra. Dr. Cage stated that if a physician used excessive force to remove the catheter, he would either rip the suture loose from the catheter or rip the suture out of the urethra. He said there would be bleeding and the bladder repair would be ruined. Dr. Cage testified that the evidence indicated that defendant pulled enough to make sure the catheter would not come out and then appropriately consulted with Dr. Edgerton for removal of the suture. Dr. Cage stated that causing a patient to scream in apparent pain would not necessarily indicate that a physician violated the standard of care, because every patient has a different pain threshold. Dr. Cage opined that defendant did not use excessive force in manipulating the catheter because he did not pull out the suture. Dr. Cage testified that he was not *1110 trained to deflate and remove the catheter after placing sutures in a bladder suspension procedure, and did not know of anyone else who followed this procedure, because the abdomen would be open and removing the catheter would possibly cause contamination with the risk of urinary tract infection. Dr. Cage opined that defendant's decision not to remove the catheter during surgery was "absolutely not" a breach of the standard of care.
Dr. Hoyet Chance, a board certified urologist, died before trial and his deposition was admitted into evidence. Dr. Chance testified that when performing bladder surgery and placing sutures near the urethra, the surgeon should remove and reinsert the catheter in the operating room when the procedure was finished to determine that the catheter had not been unintentionally sutured. Dr. Chance opined that defendant breached the standard of care because he did not deflate and remove the catheter after completing the procedure in this case. However, Dr. Chance acknowledged that although such removal and reinsertion of the catheter was the practice in his operating room, he could not say that this method was the standard practice followed by urologists in this type of bladder surgery. Dr. Chance also opined that defendant deviated from the standard of care in preparing the discharge summary by stating that the inability to deflate the catheter bulb was the reason for the cystoscopy, when he knew that the plaintiff needed a suture cut from the catheter.
The defendant testified that he saw plaintiff in October 1994 with a complaint of urinary incontinence and he recommended bladder suspension surgery to correct the condition. Defendant stated that in this surgery, a Foley catheter is placed in the bladder to help locate the urethra. He explained that several sutures must be placed very close to the urethra on either side to support the bladder. Defendant testified that placing a suture in the catheter during this procedure is a complication, but not a breach of the standard of care. Defendant stated that Nurse Herring informed him of her inability to remove the catheter and he went to examine the plaintiff, who had been placed in an elevated examination chair. Defendant testified that he grasped the end of the catheter with his thumb and index finger and gave one "good pull," but the catheter did not come out and it could not be pushed inward. Defendant stated that he told the nurse he had sutured the catheter in place and called Dr. Edgerton for a urological consult. The defendant testified that he did not have a specific recollection that plaintiff had screamed in pain, and could not say whether or not she had screamed. He asserted that plaintiff had always been difficult to examine because of her "exaggerated pain response."
In their brief, the plaintiffs argue that the testimony presented concerning defendant's attempt to remove the catheter was not credible because Nurse Herring could not correctly describe Margaret Fluck's surgical incision and defendant's discharge summary was inaccurate. However, the trial court considered the evidence, heard the conflicting testimony and was able to weigh the credibility of all of the witnesses.
As stated above, Dr. Armstrong opined that defendant had not used excessive force in pulling the catheter because the suture was not torn away from the tissue, as could have been done with fairly minimal effort. Although defendant wrote in the discharge summary that the complication involved the inability to deflate the catheter bulb, the attached consultation report described the actual problem of a *1111 sutured catheter, and defendant later wrote a letter to plaintiffs acknowledging his error. Based upon this record, the trial court could reasonably have found that although defendant's manipulation of the sutured catheter caused plaintiff to feel pain, the force exerted by defendant was not unreasonable or excessive under the circumstances of this case.
In addition, plaintiffs contend defendant was negligent in failing to remove and reinsert the catheter during surgery to discover the inadvertent suturing. Contrary to plaintiffs' contention, Dr. Cage opined that removal of the catheter during bladder surgery was not the applicable standard of care. Further, although Dr. Chance stated that such removal was his practice, he could not say that this method was the standard of care for urologists or other surgeons performing this bladder suspension procedure.
Thus, the record supports the trial court's implicit finding that the plaintiffs failed to establish that removal and reinsertion of the catheter during surgery was the applicable standard of care. Consequently, we cannot say the trial court was clearly wrong in its evaluation of the testimony or in finding that defendant was not negligent in his treatment of the plaintiff. The assignments of error lack merit.
Informed Consent
The plaintiffs contend the trial court erred in finding that defendant obtained their informed consent for the surgical procedure. Plaintiffs argue that defendant should have advised them that suturing of the catheter was a recognized risk of the bladder suspension surgery.
In a medical malpractice action based on inadequate disclosure of risk information by a physician, the patient bears the burden of proving the existence of a material risk unknown to the patient, a failure to disclose the risk by the physician, that disclosure of the risk would have led a reasonable patient in plaintiff's position to reject the medical procedure or choose a different course of treatment, and injury. Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1988); Roberts v. Cox, 28,094 (La.App.2d Cir.2/28/96), 669 So.2d 633.
In the present case, Drs. Armstrong and Cage testified that the consent form used by defendant complied with the standard of care since it warned of the more common and serious complications that could occur, such as paralysis or death. Dr. Cage testified that he did not inform his patients of the risk of suturing the catheter because he had not made that mistake and he had seen it happen only twice in forty years of practice. Dr. Cage opined that such a risk was not sufficient to mention as a routine complication. Dr. Armstrong testified that the medical review panel found that plaintiffs were informed of the risks of the surgery and the possibility of complications.
The plaintiffs' own expert, Dr. Chance, testified that he did not inform bladder surgery patients of the possibility of inadvertent suturing of the catheter in obtaining informed consent. The plaintiff acknowledged that she had signed the consent form for the bladder repair procedure.
Based upon the testimony presented, the trial court could have reasonably found that given plaintiffs' awareness of serious risks such as loss of organs, brain damage or death, the disclosure of the risk of a sutured catheter would not have reasonably influenced plaintiff to reject the bladder repair procedure. After reviewing the record, we cannot say the trial court erred in finding that informed consent was obtained. The assignment of error lacks merit. Considering the above disposition, *1112 we pretermit discussion of the remaining assignment of error concerning damages.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to the appellants, Margaret and Jack Fluck.
AFFIRMED.