JOAN BERNARD ARMSTRONG, Chief Judge.
pThe defendants-appellants, 200 South Broad Street, Inc. and Allstate Insurance Company, appeal a judgment awarding the plaintiff-appellee, Rilda Hayes, $15,000.00 in general damages and $4,109.34 in special damages, plus interest and costs in a slip and fall personal injury case. We affirm.
No party appeals the amount of the award.
At the outset we note that this is a fairly straight-forward manifest error case.
It is uncontested that on July 18, 2000, the plaintiff, during a dentist appointment, was asked to move her vehicle because it was blocking another vehicle in the parking lot. When she went to move the vehicle she fell, resulting in the injuries for which she was awarded damages in this suit.
On July 11, 2001, plaintiff filed suit alleging that the parking lot had a crack and or/or hole creating the dangerous condition that caused her fall. Dr. Warren McKen-na and Allstate Insurance Company as his insurer, were named as defendants for failure to properly maintain the parking lot. The plaintiff died on February 10, 2003 and her legal successors[1] were substituted as party plaintiffs in July of 2003. Prior to her death she testified by deposition which was admitted at | ¡.the trial. On February 27, 2004, the plaintiff filed an amended petition adding as an additional defendant, 200 South Broad Street, Inc., as the owner of the parking lot. As the insurer of 200 South Broad Street, Inc., Allstate was again named as a defendant. Although the amended petition retained Dr. McKen-na as a named defendant, when judgment was rendered, only Allstate and 200 South Broad Street, Inc. were cast in judgment.
Negligence for damages caused by defects in things is governed by La. C.C. arts. 2317 and 2317.1. La. C.C. art. 2317 provides in pertinent part that:
We are responsible, not only for the damage occasioned by our own act, but for that ... which we have in our custody. This, however, is to be understood with the following modifications.
Next La. C.C. art. 2317.1 provides in pertinent part that:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care....
Before a defendant can be held liable under art. 2317, the plaintiff must prove that 1) the thing which caused damage was in the defendant’s custody and control (garde); 2) the thing had a vice or defect which created an unreasonable risk of harm; and 3) the injuries were caused by a defect. Rolf v. Wal-Mart Stores, Inc., 00-1720, p. 3 (La.App. 5 Cir. 2/14/01), 782 So.2d 15, 16, citing Socorro v. City of New Orleans, 579 So.2d 931, 937 (La.1991). Additionally, La. C.C. art. 2317.1 adds the requirement that the injured plaintiff prove that the owner/custodian “knew or, *795 in the exercise of reasonable care, should have known” of the unreasonable risk of harm, and “that the damage could have been prevented | ¡¡by the exercise of reasonable care, and that [the owner/custodian] failed to exercise such reasonable care.” Id.
Cases involving defective conditions are fact intensive; consequently manifest error governs the question of unreasonable risk:
[B]ecause a determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case, followed by an application of those facts to a less-than-scientific standard, a reviewing court is in no better position to make the determination than the jury or trial court. Consequently, the findings of the jury or trial court should be afforded deference and we therefore hold that the ultimate determination of unreasonable risk of harm is subject to review under the manifest error standard. A reviewing court may only disturb the lower court’s holding upon a finding that the trier of fact was clearly wrong or manifestly erroneous. Stobart v. State, 617 So.2d 880 (La.1993). [Emphasis added.]
Rolf, supra, quoting Reed v. Wal-Mart Stores, Inc., 97-1174 (La.03/04/98), 708 So.2d 362, 364-65.
The defendants do not contest ownership of the premises where the fall occurred. The defendant contends that the plaintiff failed to prove where in the parking lot the fall occurred which is essential to show that an unreasonably dangerous condition existed at that spot. The trial court determined, based upon, according to the written reasons for judgment, “the evidence and testimony presented, including the photographs and discovery responses,” that the fall occurred where there was a hole or depression in the parking lot which the defendants alleged was there to facilitate drainage from one area of the lot where a higher area of concrete met a lower level of asphalt. The defendants do not dispute the fact that they had actual or constructive knowledge of long standing of the existence of this drainage hole or depression.
|4The defendants contend that the photographs furnished by them in response to the following interrogatory were not intended .to show the exact location where the fall occurred and, therefore, cannot support the plaintiffs contention that she fell in the drainage hole:
Interrogatory Number 17:
If photographs of the accident scene were obtained by you, or anyone acting on your behalf, please state the total number of photographs obtained, by whom and the scene each depicts.
Answer to Interrogatory Number 17:
See attached copies of photographs.
The defendants argue that the photographs do not represent the exact place where the fall occurred; and that Dr. McKenna, to whom the photographs were attributed as the party to whom the interrogatories were directed, testified that he did not know the exact spot where the plaintiff fell. The defendants argue, in effect, that it is just coincidence that the arrows in the photos pointing to the depression are mere coincidence. After reviewing the photos, we cannot say that an implicit finding by the trial court that the arrows in certain photos pointing to the depression in the parking lot denoted the location of the plaintiffs fall would be manifestly erroneous. Moreover, the plaintiff also introduced photographs of the depression and the reference in the trial court’s written reasons for judgment to photo *796 graphs was not limited to the photos furnished by the defendants.
Additionally, we find that the plaintiffs testimony concerning her fall was consistent with a finding that, more likely than not, that her fall occurred at the location of the depression. A reasonable fact finder conceivably could have found the plaintiffs testimony that the concrete gave way beneath her step was consistent 15with a fall at the location of the preexisting depression. However, under the manifest error standard, we cannot conclude that a reasonable fact finder could not have determined that, in the confusion of the fall and in light of the substantial cracks in the parking lot, Mrs. Hayes could not have received the impression that the depression gave way beneath her step. In view of the considerable cracking in the surface of the parking lot, another reasonable interpretation of Mrs. Hayes’ testimony is that small grains of the concrete came loose or “gave way” causing her to slip into the depression.
The trial court’s finding that Mrs. Hayes was not at fault in failing to see the depression because the parking lot was full of cars is reasonable under the circumstances. This finding is supported by the fact that the plaintiff was asked to move her car from a location where it impeded another vehicle’s egress because of the crowded condition. While the record might permit another reasonable fact finder to find to the contrary is insufficient to establish error under the manifest error/clearly wrong standard of review.
The defendants also argue that the failure of the plaintiff to introduce photos at trial that she had previously identified at her deposition create an adverse inference that they were unfavorable to the plaintiff. However, we agree with the trial court’s finding that the defendants had the photos available to them and if they felt that they benefited their case they should have introduced them.
As to the issue of whether an unreasonably dangerous condition existed we agree with the following finding of the trial court:
The photos depict a hole where a significant portion of the concrete and/or asphalt is missing. This, in and of itself, creates a dangerous condition. However, the condition is made even more perilous by the fact that it is located directly on an area where there is a 5"-6" height | fidifferential. Thus, the hole in the concrete is exacerbated by this change in elevation.
Having carefully studied the evidence ourselves, this Court not only finds no manifest error in the trial court’s conclusion that an unreasonably dangerous defect existed, but we would reach the same finding had this been a de novo review and not a manifest error review.
The defendants argue that the trial court failed to consider the social utility of the drain. However, we note that at in the middle of the third page of the trial court’s written reasons for judgment under the section designated “(B) Unreasonably Dangerous Defect” the trial court makes four references to the issue of “utility.” We have also reviewed that portion of the trial transcript of Dr. McKenna’s testimony cited by the defendants as supportive of their assertion that they effectively established the utility of the depression as a drain. We find nothing in that testimony that would have explained how a depression at this one location would effectively drain the wide expanse of higher asphalt onto the lower level concrete or how once it reached the concrete it was to find its way to the “permanent grate drain” referred to by Dr. McKenna in his testimony. There is nothing in the pictures of the *797 depression that would guide the water flowing from the higher asphalt in any particular direction once it flowed to the lower concrete level. There is no explanation of why this depression adds anything significant to the movement of water that would occur naturally from the higher level of the parking lot to the lower simply by virtue of the force of gravity. The testimony of Mr. Joseph Russell Labbe, the general contractor who testified that he built the parking lot is no more illuminating in this regard than was the testimony of Dr. McKenna referred to above.
|7Thus we find that as the trial court clearly and expressly declared its awareness of the significance of the question of “utility” in this case; and as the record supports the trial court’s implicit finding that the defendants failed to establish the utility of the depression, we find that there is no error in the judgment of the trial court regarding the issue of “utility.”
For the foregoing reasons, the judgment of the trial court is affirmed. The defendants-appellants are to bear all costs of this appeal.
AFFIRMED.

. Rilda Hayes and her successors will be referred to interchangeably throughout this opinion as simply the "plaintiff.”