617 So.2d 880 (1993)
Shirley STOBART & Edward Stobart, Applicants,
v.
STATE of Louisiana, Through DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Respondent.
No. 92-C-1328.
Supreme Court of Louisiana.
April 12, 1993.
*881 James S. Gates, Morrow, Morrow, Ryan & Bassett, Opelousas, for applicant.
Richard P. Ieyoub, Atty. Gen., W. Steven Mannear, Poynter, Mannear & Speer, Baton Rouge, for respondent.
CALOGERO, Chief Justice.[*]
We granted certiorari on plaintiffs' application to decide whether the Court of Appeal applied properly the correct review standard when it found that the trial court was clearly wrong in its conclusion that the roadway contained a defect and that the DOTD had actual or constructive notice of the defect. The court of appeal concluded that the trial court's findings were manifestly erroneous and reversed the trial court's decision, 601 So.2d 33. For the following reasons, we conclude that the court of appeal misapplied the manifest error-clearly wrong standard. Accordingly, we reverse the court of appeal's decision and reinstate the judgment of the trial court.
This case arises out of an one-vehicle accident which befell Shirley Stobart on April 26, 1986 around 8:00 a.m. as she drove a truck to Baton Rouge in preparation for a crawfish boil. The accident occurred on I-10 between Baton Rouge and Lafayette.
While crossing a bridge, Mrs. Stobart proceeded from the right lane to the left lane of the interstate to pass another car. As she exited the bridge, she lost control of the truck. The truck moved onto the grassy median and rolled over several times before coming to a stop. Mrs. Stobart was seriously injured.
Mrs. Stobart along with her husband filed suit against the State through DOTD, claiming that a defect in the road caused her to lose control of her vehicle. The trial judge apportioned fault 50 percent to the state and 50 percent to Mrs. Stobart. Defendants filed a suspensive appeal.
The court of appeal reversed the trial court, finding that the "sole reason for the accident was Stobart's failure to maintain control of her vehicle." The court also found that the plaintiff had failed to prove by a preponderance of the evidence that DOTD had actual or constructive notice of a defect in the roadway.
It was factual, rather than legal, grounds which prompted the court of appeal to reverse the trial court's findings and judgment. The appellate court concluded that the record did not support two crucial predicates necessary for the plaintiff to recover.[1] First, the appellate court *882 concluded that the evidence did not establish that the roadway contained a defect. Furthermore, the court concluded that even had the plaintiffs' established that the roadway contained a defect, the plaintiffs would be barred from recovery because the plaintiffs had failed to carry their burden of proving that the defendant had actual or constructive notice of the defect.
The trial court's findings that a defect existed in the roadway and that the defendant had actual or constructive notice of the defect are factual findings which should not be reversed on appeal absent manifest error. While the Court of Appeal correctly identified the manifest error-clearly wrong standard as the standard to be applied to appellate review of fact, the appellate court erred in its application of the standard.[2]
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed *883 in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
This court has recognized that "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Canter v. Koehring Co., 283 So.2d 716 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
In the present case, we conclude, after review of the record, that the trial judge was presented with two permissible views concerning whether a defect existed in the roadway as well as whether the defendant had actual or constructive notice of the defect. The trial court's findings were not manifestly erroneous.
We first address the trial court's finding that the roadway contained a defect. The appellate court found and the defendants urge that the documentary evidence[3] reveals no defect in the roadway. However, several witnesses testified that the roadway was substandard.
Mrs. Stobart testified that the roadway contained several bumps and a pothole. Larry Horton, the state trooper who investigated the accident, corroborated Mrs. Stobart's testimony.
The accident report prepared by Officer Horton does not refer to a pothole in the roadway. However, Officer Horton testified that several bumps and a pothole did indeed exist in the roadway. And his accident report specifically referred to the bumps. Officer Horton also testified that when he drove over the bridge in the left lane he noticed the roadway contained a bump in the left lane. Moreover, Horton testified that he had observed vehicles bounce as they entered and left the bridge. Horton concluded that Mrs. Stobart was surprised by the bumps. Officer Horton reached this conclusion "from [his] observing people who appeared to be travelling through the area, when they came across that bump, there was a severe shock ... [and from] listening to and conversation from drivers on the CB radio."
Horton further stated that he inspected Mrs. Stobart's vehicle and noted no defects. He concluded that Mrs. Stobart lost control of her vehicle as she attempted to correct her vehicle after being surprised by the bump.
James Stelly, Mrs. Stobart's ex-husband, testified that he went to the accident scene two days after the accident. Mr. Stelly observed a pothole in the road and a bump at the exit of the bridge. Mr. Stelly noted that he was aware of the poor condition of the roadway and that he avoided driving in the left lane at this point in the interstate because of the poor condition of the roadway.
Mr. Stobart testified that he went to the accident scene the day after the accident. He testified that the roadway contained a pothole. Mr. Stobart stated: "the left hand lane next to the yellow stripe was an extremely bad area where this pot hole existed along with deteriorating crack further down." Referring to the pot hole, Mr. Stobart stated: "they were deep enough to hang a tire and cause your steering wheel to jerk in your hands because it had done that to me in my pick up." Moreover, Mr. Stobart testified that the roadway on each end of the bridge had experienced "an extreme amount of settlement" and that "[i]t had been repeatedly patched up."
Moreover, Luther Coxe, Jr., the plaintiff's accident reconstruction expert noted that the video revealed that vehicles proceeding in the left hand lane experienced "considerable bouncing." Based upon Officer Horton's testimony and report, the other witnesses' testimony, the photographs *884 taken by Mr. Stobart, the video taken by Mr. Stelly, and his own investigation, Mr. Coxe concluded: "[i]n my opinion, the condition of the bridge and it's exit with respect to the traffic way are the initiating factors to this incident."
Mr. Gene B. Moody, the plaintiff's civil engineer expert, also testified that the video revealed extreme movement of the vehicles. He also testified that he had driven many times before on the roadway where the accident occurred and that he "was aware of the deterioration of the roadway through there." Mr. Moody also testified that major repairs were made to the bridge after the accident occurred. Mr. Moody explained that the approach slabs at each end of the bridge had deteriorated to a condition where the state had to install ramps. He further elaborated that the bridge was built on pilings and accordingly settles very little while the roadway was built through the swamp and settles over time. Thus, the ramps were necessary to offset the settlement which had occurred. Mr. Moody also concluded that the deterioration of the expansion joints occurred over a period of years. Connie Varden, a highway foreman with DOTD, conceded that during the months preceding the accident the stretch of interstate on which the accident occurred had "recurring problem[s]" with the bridge ends.
The testimony of Mrs. Stobart and the corroborating testimony of Mr. Stobart, Officer Horton, Mr. Stelly, and Mr. Moody constitute a "reasonable factual basis for the finding of the trial court" that a defect existed in the roadway. While the defect may not be apparent in the documentary evidence (i.e. Mr. Stobart's photographs and Mr. Stelly's videotape), this situation does not appear compelling enough to conclude that no reasonable trier of fact would have credited Mrs. Stobart, Officer Horton, Mr. Stobart and James Stelly. Despite this apparent conflict in the evidence, an appellate court must defer to the factfinder's decision absent the decision's being manifestly erroneous or clearly wrong. In this case the factfinder was faced with two permissible views of the evidence. Accordingly, the trial court's decision was not manifestly erroneous or clearly wrong. The Court of Appeal erred when it reversed the trial court's finding.
The second question is whether the appellate court erred in its alternative conclusion when it rejected the trial court's finding that the defendant had actual or constructive knowledge of the defect.[4] In its assignment of oral reasons, the trial court did not specifically address the issue of whether the DOTD had actual or constructive notice of the defect. However, implicit in the trial court's apportionment of liability of 50% to Mrs. Stobart and 50% to the DOTD is the finding that DOTD had notice of the defect. Moreover, during argument of a motion to dismiss at close of plaintiff's evidence the trial court stated "I think the Highway Department knew or should have known."
The appellate court noted that Mr. Thomas Quatrevingt, a maintenance supervisor for DOTD, testified that he rode all the state roads in Iberville Parish at least once every two weeks and that he could not remember any continuing problems with the expansion joints on the bridges at the interstate causing bumps.
Connie Varden, a highway foreman with DOTD, testified that she drove over the accident site at least three times a week during the months immediately prior to the accident and that she never experienced any problem with the bridge at issue. She also testified that she had no record of ever receiving a complaint from any person about the condition of the bridge.
Mr. Henry Stewart, an operator for DOTD, testified concerning the bridge that "It wasn't bad of what I know of."
Despite these remarks which the appellate court relied upon to reverse the trial court's decision, Mr. Stewart testified that he was aware of "little bumps" on the roadway around the bridge. This statement indicates that an employee of DOTD had actual knowledge of the existence of a bump in the roadway. While Mr. Stewart *885 downplayed the size of the bump, his statement acknowledges the existence of something other than a smooth roadway.
Moreover, Officer Horton testified that he was aware of the bumps on the roadway. And, he testified that he had told individuals at the police station of the conditions at this bridge. Officer Horton also acknowledged that he had observed vehicles bouncing as they entered and exited the bridge. The officer explained that he was aware of "quite a few" complaints concerning the roadway.[5] One reasonable inference from Officer Horton's testimony is that the DOTD knew or should have known of the poor condition of the roadway. Additionally, as noted above, several witnesses testified as to that poor condition.
Considering the testimony and the inferences therefrom as well as the other evidence, the trial judge was faced with two permissible views of the evidence concerning whether the DOTD knew or should have known of the defect in the roadway. His finding was not manifestly erroneous or clearly wrong. The appellate court erred when it concluded that the plaintiff failed to prove by a preponderance of the evidence that DOTD had actual or constructive notice of the defect.
After considering the demeanor and credibility of the witnesses and evaluating the evidence presented in this case, the trial court concluded that the a defect in the road caused Mrs. Stobart to lose control of her vehicle and that the DOTd knew or should have known of this defect. Accordingly, the Court of Appeal should not have upset the trial court's 50/50 allocation of fault and the corresponding damage award.

DECREE
For the foregoing reasons, the decision of the court of appeal is reversed and the judgment of the trial court is reinstated.
REVERSED; DISTRICT COURT JUDGMENT REINSTATED.
NOTES
[*] Judge Melvin A. Shortess of the First Circuit Court of Appeal sitting in place of Cole, J., now retired. This case was argued on November 30, 1992. For the procedure employed in assigning cases after January 1, 1993 to rotating panels of seven justices, see State v. Barras, 615 So.2d 285, 286 n. 1 (La.1993).
[1] To recover on a claim of strict liability against a public entity, a plaintiff must establish that a defect existed in the publicly owned thing, that the defect caused an unreasonable risk of harm, that his injury was caused by the defect, and that the public entity had "actual or constructive notice of the particular vice or defect which caused the damage...." La.Rev.Stat. § 9:2800 (West 1991); Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Fragala v. City of Rayville, 557 So.2d 1118 (La.App.2d Cir.1990).
[2] This state's appellate review standard, which is constitutionally based and jurisprudentially driven, is that a court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. Accordingly, appellate courts are charged with a duty to affirm the trial court's decision absent an error of law or a factual finding which is manifestly erroneous or clearly wrong.

Rule X of the Supreme Court Rules does not include, as one of the suggested grounds for the granting of a writ application, review by this Court of issues involving simply factual determinations. Thus, this Court will not ordinarily grant a writ application involving only the correctness of the factual conclusions of the factfinder. However, this court will grant a writ application involving factual determinations where the Court of Appeal has committed an error of law (such as where the appellate court articulated the manifest error-clearly wrong standard incorrectly, or misapplied or ignored the standard) or where justice requires it. Nevertheless, more often than not this Court does not grant writs involving factual issues only.
[3] The documentary evidence consists of a videotape taken by Mr. Stelly two days after the accident and photographs taken by Mr. Stobart's photographs the day after the accident.
[4] See supra note 1.
[5] The trial judge sustained the defendant's objection to this testimony on the basis that it was hearsay. As explained by plaintiff's counsel, however, the questioning went to the fact that complaints were made and the nature of such complaints, a relevant inquiry when the question at issue is whether the department knew or should have known of the defect, as opposed to the truthfulness/trustworthiness of the statements. Thus, Officer Horton's statement that he was aware that complaints were made pertaining to the roadway does not constitute hearsay.