835 So.2d 749 (2002)
Chuck SMITH
v.
J.E. MERIT CONSTRUCTORS, INC.
No. 2001 CA 2824.
Court of Appeal of Louisiana, First Circuit.
November 8, 2002.
*751 Michael L. Hyman, Baton Rouge, Counsel for Plaintiff/Appellant Chuck Smith.
Kirk L. Landry, Baton Rouge, Counsel for Defendant/Appellee J.E. Merit and ESIS.
Before: FOIL, FOGG, and KLINE,[1] JJ.
KLINE, J.
This is an appeal from a judgment of the Office of Workers' Compensation ("OWC"), finding in favor of defendant, J.E. Merit Constructors, denying claimant Chuck Smith's claim for indemnity benefits, penalties, and attorney fees. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Following a May 2, 2001 hearing, the OWC judge summarized the case in its oral reasons for judgment as follows:
This is Chuck Smith versus J.E. Merit Constructors, 99-09579. This matter came for trial on May 2nd, 2001. Judgment was rendered on May 21st, 2001, and the Court is now prepared to render reasons for judgment.
Chuck Smith was employed by J.E. Merit Constructors in June 1998. He was injured while in the course and scope of his employment. The employer paid medical bills and expenses related to the accident. The claimant received workers' compensation benefits or worked for J.E. Merit[,] until October of [1999]. The claimant filed [a] petition seeking payment of additional indemnity benefits and penalties and attorneys fees for untimely payment of medical bills.
The parties stipulated that the claimant was injured in the course and scope of his employment and [have] stipulated that claimant's average weekly wage was $609.50.
As far as the claim for the unpaid medical bills was concerned, the claimant testified that he received a bill concerning a test that was run before his surgery. Claimant didn't know if the bill was unpaid at the time of trial. He couldn't testify if it had been forwarded to the insurance adjustor, and he did testify that at the time of the trial to his knowledge all of the medical bills and expenses had been paid, and he testified further that he was no longer receiving the bills. The medical bill was admitted into evidence, but it failed to show what it was for, when the tests were run and what the relationship was to the injury. Claimant had no proof of when the bill was actually paid, and so I find that there's no proof that the bill was not paid in a timely fashion. And, therefore, penalties and [attorney's] fees are not owed.
The larger question was whether indemnity benefits are owed. The claimant testified that he was currently working and that he was earning $17 per hour at this time. He testified that he was only able to work 20 to 25 hours per week because of his injuries. Callie Sparks, his present employer testified that the claimant currently works for him and has been working for him for many months. Mr. Sparks also testified that claimant was not able to work a 40-hour week, that the evidence that was submitted from Mr. Sparks' company shows that Mr. Smith worked a 40-hour week in the past and Mr. Sparks testified that he had work[ed] 40 hours or *752 more for Mr. Sparks on more than one occasion.
Mr. Sparks also testified that part of the reason why he didn't work 40 hours a week at this time was because of the lack of work, not because of the injury. There's also no medical in the file that shows that Mr. Smith is unable to work 40 hours a week.
Further proof of his ability to work a 40-hour week is the fact that he had gone back to work for J.E. Merit, and he had worked with them at two different plants after his injury. He had been accommodated for his injury. He had worked for J.E. Merit for seven months after his injury, and he had worked a 40-hour week and was paid his wage. He had surgery on his knee in March of 1999. He was released to return to work in October of 1999. He was offered a light-duty position by Tony Lambert of J.E. Merit in October of 1999 at the Motiva Plant. He reported to work, did the paperwork and then quit, because in his opinion he was unable to do the work, yet his job duties had not even been assigned to him at that time. He did testify that they had accommodated him before his surgery, and he didn't state why he didn't think he would be able to do a job when they had accommodated him before and they hadn't even told him what he was expected to do when he quit.
Taking all of the evidence that's been submitted into evidence, I find that the claimant has failed to prove [by] a preponderance of the evidence that he is permanently or temporarily totally disabled. He's also failed to prove that he cannot earn 90 percent of his pre-injury wages.
Most significantly, the claimant was offered a position at J.E. Merit that would have paid him his full salary. He reported to that job, and then he quit.
But more significant than just the offering of the job is the fact that the testimony showed that J.E. Merit had offered him a position where he was accommodated because of his injury before his surgery, he had worked there for seven months and that this was basically what J.E. Merit was doing was they were offering him a position where they would accommodate him as much as possible. He never tried.
In addition to the fact that he was offered a position by J.E. Merit, his own testimony shows that he is capable of performing work earning $17 per hour and that he is capable of working 40 hours per week as evidenced by his current employer's pay records. When you computate [sic] $17 an hour by 40 hours per week, it gives him a current wage of $680 per week, which is 90 percent of his pre-accident weekly wage.
There is no medical evidence showing that Mr. Smith is restricted from working a 40-hour week; and, therefore, I don't believe that he has proved that he is owed any indemnity benefits. Therefore, the claim for indemnity benefits is denied.
Thereafter, on May 21, 2001, the OWC judge signed a judgment in favor of defendant, J.E. Merit Constructors ("J.E.Merit"), denying Mr. Smith's claim for penalties and attorney fees and his claim for indemnity benefits.
Mr. Smith appeals the OWC's judgment, asserting the following assignments of error:
1. The [workers'] compensation [j]udge erred in finding that Appellant had failed to prove by a preponderance of the evidence that he cannot earn 90% of his pre-injury wages.

*753 2. The [workers'] compensation judge erred in holding that Appellee had carried its required burden of proof, in finding that the job offered to Appellant was appropriate to Appellant's physical limitations.
3. The [workers'] compensation judge erred in giving credibility to the signed job analysis form that was completed by the doctor after Appellant had tried the job, without success. [Emphasis original.]

LAW AND DISCUSSION
All of the assignments of error asserted by Mr. Smith raise factual issues. Mr. Smith argues that the proper standard of review in a workers' compensation case is not the manifest error-clearly wrong standard of review, but rather the substantial evidence test as set out in the Louisiana Administrative Procedure Act, La. R.S. 49:950 et seq. The Louisiana Supreme Court determined that the same standard of review applicable to factual findings of district courts is also applicable to factual findings of a workers' compensation judge. Jurisprudence clearly establishes that in workers' compensation cases, the appropriate standard of review to be applied by appellate courts is the "manifest error-clearly wrong" standard. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556; Alexander v. Pellerin Marble & Granite, 93-1698, pp. 5-6 (La.1/14/94), 630 So.2d 706, 710; Brown v. Coastal Construction & Engineering, Inc., 96-2705, p. 4 (La.App. 1st Cir.11/7/97), 704 So.2d 8, 10. For an appellate court to reverse a workers' compensation judge's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the workers' compensation judge or that the record establishes that the finding is clearly wrong. See Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, the reviewing court must do more than simply review the record for some evidence that supports or controverts the workers' compensation judge's finding. The reviewing court must review the record in its entirety to determine whether the workers' compensation judge's finding was clearly wrong or manifestly erroneous. See Stobart v. State, through Department of Transportation and Development, 617 So.2d at 882.
The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, through Department of Transportation and Development, 617 So.2d at 882. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
The primary issue presented for decision on appeal is whether appellant proved by a preponderance of the evidence, before the OWC, that he was unable to earn ninety percent of his pre-accident wages and therefore entitled to collect supplemental earnings benefits ("SEB") from his employer. The purpose of SEB is to compensate the injured employee for wage earning capacity he has lost as a result of his accident. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993); Hurst v. Baker Sand Control, 94-2463, p. 4 (La.App. 1st *754 Cir.10/6/95), 671 So.2d 408, 411. Like all other provisions of the workers' compensation law, the provisions governing SEB must be liberally construed in favor of coverage. Daigle v. Sherwin-Williams Company, 545 So.2d 1005, 1007 (La.1989).
The payment of SEB is governed by La. R.S. 23:1221(3), which provides benefits for injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages are computed by multiplying his "wages" by fifty-two and then dividing the quotient by twelve.
Thus, the claimant in a SEB case must prove by a preponderance of the evidence that his work-related injury rendered him unable to earn ninety percent of his pre-injury wages. Moore v. Mason & Dixon Tank Lines, 540 So.2d 525, 528 (La.App. 1st Cir.), writ denied, 541 So.2d 1390 (La.1989); Fusilier v. Slick Construction Company, 94-11, p. 4 (La.App. 3rd Cir.6/1/94), 640 So.2d 788, 791. It is irrelevant whether the claimant is physically able to perform his former sedentary job that is no longer available. The relevant question is whether the claimant is partially disabled and whether he is unable to earn ninety percent of the wages he was earning prior to the injury. A claimant is not entitled to SEB when his inability to earn wages equal to ninety percent of his pre-injury wages is due to circumstances other than his work-related injury. Hurst v. Baker Sand Control, 671 So.2d at 412.
Once the claimant establishes a prima facie case for his entitlement to SEB, the burden shifts to the employer to show that the claimant is physically capable of work and that the work was offered or available to the claimant in his or the employer's community or reasonable geographic area. Daigle v. Sherwin-Williams Company, 545 So.2d at 1008-09. If the employer meets this burden, then the employee must show by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely as a consequence of substantial pain. La. R.S. 23:1221(3)(c)(ii).
Whether a claimant's injury prevents him from obtaining employment earning ninety percent of his pre-injury wages is a question of fact. Morris v. Norco Construction Company, 632 So.2d 332, 335 (La.App. 1st Cir.1993), writ denied, 94-0591 (La.4/22/94), 637 So.2d 163. Thus, the appellate court may not set aside the workers' compensation judge's findings in this regard absent manifest error or unless the findings are clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d at 883.
There is no dispute that Mr. Smith was injured in the course and scope of his employment and was therefore entitled to workers' compensation benefits. The parties stipulated to the compensable *755 nature of the injury at trial, and J.E. Merit did pay workers' compensation benefits to Mr. Smith after the accident and paid for his medical bills. The conflict between the parties concerns the extent of Mr. Smith's disability and specifically, whether Mr. Smith is still disabled and unable to earn ninety percent of his pre-injury wages. The parties do not seriously dispute that plaintiff is able to perform light duty work, but rather, the issue is whether Mr. Smith established that he is physically unable to perform work that was offered to him or that was available in the community or a reasonable geographic location.
Mr. Smith contends the OWC erred in denying him SEB. He maintains he cannot earn ninety percent of his pre-accident wages because he is incapable of returning to work at his pre-employment job. He argues that although he had worked prior to his surgery in March of 1999, the jobs were modified to meet his physical limitations. After his surgery, he asserts he was never released by any physician to return to his pre-accident job duties.
The OWC judge obviously concluded, after evaluating the testimony and medical records, that Mr. Smith failed to prove by a preponderance of the evidence that his work-related injury resulted in his inability to earn ninety percent of his pre-injury wages. After reviewing the record in its entirety, we find that a reasonable basis exists for this finding. The record reveals that Mr. Smith returned to work on numerous occasions, performing his duties as modified by J.E. Merit to accommodate Mr. Smith's restrictions, as related by him, earning one hundred percent of his pre-injury wages. The record also reveals that, after Mr. Smith left J.E. Merit, he secured a position with Pipe & Steel Industrial Fabricators, Inc., owned and operated by Callie Sparks. Although Mr. Smith asserted that he worked part-time because of his disability, testimony provided by both Mr. Smith and Mr. Sparks indicated that a reason for the part-time schedule was that work was not available and was not necessarily due to Mr. Smith's disability. In fact, on occasion, Mr. Smith worked forty-hour weeks and even worked overtime when possible. The record amply supports the OWC's finding that Mr. Smith failed to prove by a preponderance of the evidence that his work-related injury resulted in his inability to earn ninety percent of his pre-injury wages. Therefore, Mr. Smith is not entitled to SEB.

CONCLUSION
For the foregoing reasons, the judgment of the OWC is affirmed. All costs of this appeal are assessed against appellant, Chuck Smith.
AFFIRMED.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.