992 So.2d 1085 (2008)
STATE of Louisiana in the Interest of S.M. and J.M.[1]
No. 2008 CJ 0362.
Court of Appeal of Louisiana, First Circuit.
July 9, 2008.
*1086 Sherry Watters, Theresa A. Beckler, Harahan, Louisiana, for Appellee, State of Louisiana, Department of Social Services, Office of Community Services.
Russell Clayton Monroe, Greensburg, Louisiana, for Appellant, B.G.
Before PARRO, KUHN and DOWNING, JJ.
KUHN, J.
Appellant, B.G., the biological father of the minor child, S.M., appeals the denial of his motion for new trial and the juvenile court's decree terminating his parental rights to S.M. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
In August 2005, S.M., who was born on March 10, 2003, was declared a child in need of care based on a determination that his mother, R.M., had an addiction to illegal substances, which prevented her from providing adequate care and supervision to the child. Based on R.M.'s representations of paternity, the State of Louisiana, Department of Social Services, Office of Community Services (OCS), initiated DNA testing of B.G. On July 12, 2005, paternity test results established that B.G. was S.M.'s father. B.G., who was incarcerated at Washington Correctional Facility in Angie, Louisiana, and his attorney were present in court on August 15, 2005, when the court continued S.M.'s care in the custody of OCS.
On January 12, 2006, R.M. executed a voluntary act of surrender by an unmarried mother.[2] A motion to file the act of surrender and a notice of the filing of the act of surrender were filed into the record on April 10, 2006, and on April 15, 2006, the juvenile court signed the order registering and accepting R.M.'s voluntary surrender of her parental rights of S.M. The clerk of court subsequently sent the notice to B.G., by certified mail, at the Washington Correctional Facility address.
Case review hearings were held in February, March, and July 2006. The official court minutes indicate that counsel for B.G. was present at each hearing, and B.G. was present for those in March and July.[3] At these hearings, B.G. was notified that R.M. had voluntarily surrendered her parental rights and that the case plan for S.M. had changed from reunification to adoption.
On September 29, 2006, OCS filed a motion to declare R.M.'s parental rights of *1087 S.M. surrendered. The juvenile court signed a judgment on October 5, 2006, approving the surrender of S.M. by his mother, permanently terminating and dissolving all her parental rights, decreeing that more than fifteen days had elapsed and no written objection to the child's adoption had been filed by any possible alleged father or B.G., and that since all of S.M.'s parents' rights had been terminated, the child was free and eligible for adoption.[4]
On March 5, 2007, B.G. filed an opposition to the termination of parental rights and the declaration of eligibility for adoption. He subsequently filed a motion for new trial and a written opposition to the termination of his parental rights and the eligibility for adoption of S.M., asserting that he had not received service of the notice of the filing of act of surrender. The juvenile court signed a judgment on November 13, 2007, denying the motion for new trial from the judgment that decreed S.M. free and eligible for adoption and rendered judgment in favor of OCS and against B.G., terminating all parental rights to S.M.[5] This suspensive appeal by B.G. follows.[6]
On appeal, B.G. urges the juvenile court erred in concluding that he had properly been served with the notice of R.M.'s surrender of her parental rights. He also complains that the motion to declare the parental rights of S.M. terminated failed to include an attached copy of the child's birth certificate.[7]

DISCUSSION
La. Ch.C. art. 1132 provides in pertinent part:

*1088 A. If a mother of a child born outside of marriage has executed a surrender and identifies the child's alleged or adjudicated father, the agency or individual to whom the child was surrendered shall exercise due diligence in attempting to locate him and to offer pre-surrender counseling in accordance with Article 1120.
B. Upon approval of the mother's surrender by the court, notice of the filing of the mother's surrender shall be served upon the alleged or adjudicated father unless any of the following apply:
(1) His potential parental rights have been terminated by a judgment in accordance with Title X of this Code.
(2) He has executed a surrender in accordance with this Title.
(3) He has given his consent in open court in accordance with Article 1195.
(4) He has executed a release of claims in accordance with Article 1196. (Emphasis added.)
La. Ch.C. art. 1133 elaborates further on the requisite service stating,
Notice of the filing of a mother's surrender shall be promptly served upon the alleged or adjudicated father.... If he resides within this state, service shall be made by either registered or certified mail, return receipt requested, postage prepaid and properly addressed to his last known address.
An alleged or adjudicated father may oppose the adoption by filing a clear and written declaration of intention to oppose the adoption. The notice of opposition shall be filed with the court indicated in the notice of filing of the surrender within fifteen days after the time he was served with the notice of surrender, see La. Ch.C. art. 1137, in which case he is entitled to a hearing under La. Ch.C. art. 1138, at which he must establish his parental rights by acknowledging that he is the father of the child and by proving that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child.[8] If no opposition is timely received by the court, the court shall, upon motion, render an order declaring the rights of the parents terminated. La. Ch.C. art. 1142 A.
Because more than fifteen days had elapsed with no opposition having been filed by B.G., the juvenile court signed a judgment that terminated B.G.'s parental rights to S.M. On appeal, B.G. asserts that he is entitled to a hearing under La. Ch.C. art. 1138 because none of the exceptions to service set forth in La. Ch.C. art. 1132 are applicable to him, and he has not been served with the notice of surrender as required under La. Ch.C. art. 1132.
At the hearing on B.G.'s motion for new trial, the testimony established that on April 17, 2006, the deputy clerk of court sent out by registered mail the motion and order to file the surrender and the notice of surrender to B.G.'s address at *1089 Washington Correctional Institute in Angie, Louisiana.[9] The return receipt, which was introduced into evidence, showed that the certified mail was signed for on behalf of B.G. on May 5, 2006, by Charles Touchtone, a representative for B.G. A certified copy of the Washington Correctional Institute legal mail receipt log dated May 5, 2006, was introduced into evidence. The parties stipulated that if the deputy representative from the penal facility had been called as a witness, he would have identified the log as a document maintained in the normal course of business at the Washington Correctional Institute, and that the mail was delivered to B.G. from the clerk of court. The stipulation further set forth the Washington Correctional Institute representative's testimony would have been that it was the policy and practice of the penal facility that inmates would sign for their own mail. And B.G. stipulated that the signature on the certified copy of the log was his.
B.G., who also testified at the hearing, denied having received any kind of documentation informing him that his parental rights would be terminated. When shown the motion and order to file the surrender and the notice of surrender that had actually been filed into the record, he stated that he did not recall having received the documents. According to B.G., it was his habit to try to call or contact his attorney every time he received something important in the mail about his case.
Based on the testimony of the deputy clerk of court and the parties' stipulation, a reasonable factual basis exists to support the juvenile court's finding that B.G. received the motion and order to file the surrender and the notice of surrender on May 5, 2006. See Stobart v. State, Dep't of Transp. and Dev., 617 So.2d 880, 882-83 (La.1993). The deputy clerk's testimony establishes that she mailed it to B.G. in conformity with the requirements of La. Ch.C. art. 1133. Although not present to testify, based on the stipulation of the Washington Correctional Facility representative's testimony, the juvenile court could rely on his account of the facts to find that the documentation was delivered to B.G.
Moreover, at the case review hearings in February, March, and July 2006, B.G. received actual notice that R.M. had voluntarily surrendered her parental rights and that the case plan for S.M. had changed to adoption. B.G. did not acknowledge the child, register his paternity with the putative father registry, or undertake an action to assert his paternity.
Based on the testimonial evidence and the stipulation, we find the juvenile court was not manifestly erroneous in concluding that B.G. failed to timely file an opposition to the adoption of S.M. Therefore, B.G. was not entitled to a hearing under La. Ch.C. art. 1138, and the juvenile court correctly dismissed his motion for new trial.
B.G. points to the provisions of the Louisiana Code of Civil Procedure to suggest that service in this matter was erroneous because his attorney, who had filed a request for notice into the record, was not served with the motion and order to file the surrender and the notice of surrender. See La. C.C.P. arts. 1312-1314.[10]
*1090 As the more specific legislation, the procedure for service articulated in La. Ch.C. art. 1133 is applicable in this case. See Republic Fire and Cas. Ins. Co. v. State of Louisiana Div. of Admin., XXXX-XXXX, pp. 9-10 (La.App. 1st Cir.12/28/06), 952 So.2d 89, 95; see also La. Ch.C. art. 1102, Comment  1991 comment (a) (directing that the first source of procedures governing the surrender of a child for adoption is Title XI of the Children's Code; that if an issue is not resolved by procedures of Title XI, then the generally applicable provisions of Titles I, III, and IV apply; and that only after exhausting those sources do the provisions of the Code of Civil Procedure become applicable) and La. Ch.C. art. 104 (providing that where procedures are not provided in the Children's Code, or otherwise by law, a court shall proceed in accordance with the Code of Civil Procedure).[11]
OCS complied with the requirements of La. Ch.C. art. 1133 by mailing a copy of the motion and order to file the surrender and the notice of surrender  certified mail, return receipt requested, postage prepaid, and properly addressed  to B.G.'s last known address. B.G. failed to timely file an opposition to S.M.'s adoption. As such, we find no error in the juvenile court's denial of the motion for new trial.
In his final challenge, B.G. urges the juvenile court erred in concluding that the motion to declare parental rights terminated filed by OCS complied with statutory requirements. According to La. Ch.C. art. 1142 B:
The motion [to declare parental rights terminated] shall be accompanied by a certified copy of the child's birth certificate, a certificate from the putative father registry indicating whether any act of acknowledgment by authentic act has been recorded, and a certificate from the clerk of court in and for the parish in which the child was born indicating whether any acknowledgment by authentic act, legitimation by authentic act, or judgment of filiation has been recorded relative to this child.
B.G. asserts that because OCS failed to attach a certified copy of the child's birth certificate to the motion, the order decreeing S.M. free and eligible for adoption should be reversed. While the record fails to demonstrate that the certified copy of the child's birth certificate was annexed to *1091 the motion, it was attached to R.M.'s voluntary act of surrender, which was filed into the record prior to the motion to declare parental rights terminated.[12] Having previously been filed into the record, it was available to the court to examine prior to its rendition of judgment. Accordingly, we find no prejudicial error.

DECREE
For these reasons, we affirm the juvenile court's judgment, denying B.G.'s motion for new trial and terminating his parental rights to S.M. Appeal costs are assessed against B.G.
AFFIRMED.
NOTES
[1] The initials of the parties will be used to protect and maintain the privacy of the minor child involved in this proceeding. See La. URCA Rules 5-1 and 5-2.
[2] R.M. also surrendered her parental rights of S.M.'s younger brother, J.M., at the same time. The rulings in subsequent proceedings involving J.M. are not before us in this appeal.
[3] At the February 23 and July 27 case review hearings, B.G.'s attorney of record was not present but other attorneys stood in for him.
[4] B.G. suggests that the juvenile court committed error by rendering a judgment that terminated B.G.'s parental rights pursuant to La. Ch.C. art. 1135, which addresses instances involving unidentified fathers. B.G. did not raise this as a briefed assignment of error and, therefore, we may consider it as having been abandoned. See La. U.R.C.A. Rule 2-12.4. We note, however, that our review of the record shows that the juvenile court clearly based its judgment resulting in the termination of B.G.'s parental rights on La. Ch.C. arts. 1132, 1133, and 1142, and while the judgment references La. Ch.C. art. 1135, it does so insofar as ordering that "no other possible alleged father [had] established his parental rights."
[5] Our review of the record shows that notice of the October 5, 2006 judgment was never served by the clerk of court. Thus, the time delays for application for a new trial had not yet elapsed on March 29, 2007, when B.G. filed his motion for new trial from the October 5, 2006 judgment. See La. Ch.C. arts. 1143 A and 332. In the juvenile court's November 13, 2007 denial of the motion for new trial, judgment was rendered "against [B.G.], terminating all parental rights to the minor child [S.M.]." Although B.G. correctly points out that a motion to terminate B.G.'s rights had not been filed to support that judgment, because he has not briefed an assertion of error, we consider it abandoned. See La. U.R.C.A. Rule 2-12.4.
[6] Although the appeal of the denial of a motion for new trial is interlocutory and non-appealable, the Louisiana Supreme Court has instructed us to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits, when it is clear from appellant's brief that the appeal was intended to be on the merits. Carpenter v. Hannan, 01-0467, p. 4 (La.App. 1st Cir.3/28/02), 818 So.2d 226, 228-29, writ denied, 02-1707 (La. 10/25/02), 827 So.2d 1153.
[7] Although in his opposition to termination of parental rights and S.M.'s adoption eligibility B.G. asserts that "the notice provisions of the Children's Code ... violates privacy protections and due process of law" as provided by the Louisiana and U.S. constitutions, he did not plead his claims with specificity or state the grounds of his challenge with particularity. See Vallo v. Gayle Oil Company, Inc., 94-1238 (La. 11/30/94), 646 So.2d 859, 864. Thus, because B.G. did not raise a constitutional attack before the juvenile court, he cannot assert it for the first time in this court.
[8] Proof of the father's substantial commitment to his parental responsibilities requires a showing, in accordance with his means and knowledge of the mother's pregnancy or the child's birth, that he either: (1) provided financial support, including but not limited to the payment of consistent support to the mother during her pregnancy, contributions to the payment of the medical expenses of pregnancy and birth, or contributions of consistent support of the child after birth; that he frequently and consistently visited the child after birth; and that he is now willing and able to assume legal and physical care of the child; or (2) was willing to provide such support and to visit the child and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child. La. Ch.C. art. 1138 B.
[9] It is undisputed that the deputy clerk of court testified incorrectly that she had sent out the motion to declare parental rights terminated and that in later adduced testimony she identified that the document she had actually sent out by registered mail on April 17, 2006, was the motion and order to file the surrender and the notice of surrender.
[10] La. C.C.P. art. 1312 states in pertinent part:

[E]very pleading subsequent to the original petition shall be served on the adverse party as provided by Article 1313 or 1314, whichever is applicable.
La. C.C.P. art. 1313A provides in relevant part:
Except as otherwise provided by law, every pleading subsequent to the original petition, and every pleading which under an express provision of law may be served as provided in this Article, may be served either by the sheriff or by:
(1) Mailing a copy thereof to the counsel of record, or if there is no counsel of record, to the adverse party at his last known address, this service being complete upon mailing.
(2) Delivering a copy thereof to the counsel of record, or if there is no counsel of record, to the adverse party.
And La. C.C.P. art. 1314A states in pertinent part:
A pleading which is required to be served, but which may not be served under Article 1313, shall be served by the sheriff by either of the following: ...
(2)(a) Personal service on the counsel of record of the adverse party or delivery of a copy of the pleading to the clerk of court, if there is no counsel of record and the address of the adverse party is not known.
[11] Additionally, we note that the requirements of the Code of Civil Procedure that mandate service of every pleading subsequent to the original petition by mailing or delivering a copy to the attorney of record expressly apply "[e]xcept as otherwise provided by law." See La. C.C.P. art. 1313 A.
[12] The birth certificate does not identify S.M.'s father.