WHIPPLE, J.
| ¡¡This matter is before us on appeal by an employer, Terrebonne General Medical Center (“TGMC”), from a judgment of the Office of Workers’ Compensation (“OWC”) in favor of the claimant, David Dawson. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On March 22, 2007, claimant, who was employed by TGMC as a “multi mechanic III” in the maintenance department, was cutting a large tree stump on TGMC property with a chain saw. The height of the stump was approximately six feet. After Dawson cut the stump from its base, Dawson pushed it off of the base so that the stump was lying on its side. As Dawson started cutting horizontally, the stump began to roll towards him. In an attempt to stop the stump from rolling over him, Dawson caught the stump by placing his right hand on the top of the stump and his left hand on the bottom of it. As the stump continued to roll toward him, Dawson felt his entire left arm “pop” under the weight of the stump.
Dawson immediately reported the accident to co-workers in the TGMC power plant and was told to report the accident to the dispatch office in the hospital. When Dawson arrived at the dispatch office to report the accident, the office was closed for the day. The next morning, March 23, 2007, Dawson reported the accident to the dispatch office, and was immediately sent to the TGMC emergency room. After examination and x-rays were taken in the emergency room, he was referred directly to Dr. Lawrence Haydel, an orthopedist. Dawson saw Dr. Haydel after leaving the emergency room that day. After Dr. Haydel examined Dawson and reviewed the x-rays, he advised Dawson that he had torn his bicep tendon from the back of his elbow. Thus, surgery was necessary to retrieve the tendon that had retracted to his shoulder and reattach it |sfrom where it had torn. On March 28, 2077, Dr. Haydel performed surgery to repair the left distal bicep tendon, after which Dr. Haydel referred Dawson to physical therapy. After receiving physical therapy, Dr. Haydel released Dawson to return to work in July of 2007.
After Dawson returned to work, he began experiencing problems with his left shoulder that became progressively *625 worse.[1] As he became increasingly concerned, Dawson called Dr. Haydel’s office to report these problems. Dawson testified that he was told by the nurse that Dr. Haydel had advised that “it was nothing” and that he should not be concerned about it. His shoulder condition continued to worsen, and on October 29, 2008, Dawson went to see a general physician, Dr. Bruce Guidry. Based on Dawson’s complaints, Dr. Guidry ordered an x-ray, cat scan, and MRI of his left shoulder and neck. Dr. Guidry referred Dawson to Dr. Haydel to read the MRI results. On February 3, 2009, Dawson returned to Dr. Haydel, and after reading the MRI, Dr. Haydel advised Dawson that he had a couple of tears in his shoulder, but that they were due to his age.[2] Dawson testified that Dr. Haydel advised him that he could just “live with it” and that his complaints were “nothing to worry about.”
Dissatisfied with Dr. Haydel’s assessment, in March of 2009, Dawson went to see another orthopedist, Dr. Jason A. Higgins. Dawson related the same complaints concerning the use of his left arm, and Dr. Higgins ordered another MRI. On review of the MRI, Dr. Higgins found a “tear involving the superior aspect of the labrum with extension anteriorly and posteriorly ... and evidence of an anterior labral liga-mentous periosteal sleeve avulsion.” In accordance with these findings, Dr. Higgins opined that Dawson had suffered significant injury to |4his left shoulder as a result of a traumatic event. Dr. Higgins recommended that Dawson undergo ortho-scopic surgery to repair the damage to his shoulder.
Dawson subsequently brought all of the records from his treatment with Drs. Gui-dry and Higgins to his employer, TGMC. However, Gulf South Risk Services, TGMC’s third-party claims adjuster for workers’ compensation claims, denied Dawson authorization for the surgery.
As a result, Dawson filed a Disputed Claim for Compensation on June 29, 2009, seeking authorization for the shoulder scope, as recommended by Dr. Higgins, and attorneys fees and penalties for the employer’s unreasonable handling of his claim. TGMC filed an answer to Dawson’s claim, basically denying that Dawson had suffered a work-related injury.
The matter proceeded to trial and was heard before the OWC on July 12, 2010. At the conclusion of the trial, the-. OWC rendered oral reasons for judgment. A written judgment in conformity therewith was signed by the OWC on July 28, 2010, setting forth the following rulings of the OWC:
(1) That claimant, David Dawson, met his burden of proof by a preponderance of the evidence that the causal connection lies between the [work-related] accident of March 22, 2007, and the current [upper-extremity] problems;
(2) That claimant is entitled to medical treatment for the above stated [upper-extremity] conditions, with the exception of the initial office visit with Dr. Higgins, said cost of the initial visit to be borne by claimant;
(3) That claimant is entitled to other out-of-pocket and unpaid medical bills so related;
*626 (4) That claimant’s original choice of orthopedic specialist was Dr. H. Lawrence Haydel;
ls(5) That the change to Dr. Higgins as claimant’s treating, physical/orthopedic medicine specialist of David Dawson is allowed;
(6) That the lien and medical claim for payment for any related medical treatment paid by Aetna Insurance must be asserted by Aetna Insurance against the employer, Terre-bonne General Medical Center, and not the Claimant, David Dawson;
(7) That penalties and attorney’s fees requested by claimant are denied, as defendant was not arbitrary and capricious/unreasonable in the adjusting of the claim;
(8) That claimant is awarded all allowable costs of these proceedings.
TGMC now appeals, assigning the following as error:
1. The [OWC] erred in failing to give more weight to the opinion of David Dawson’s treating physician, Dr. Lawrence Haydel, over the opinion of Dr. Jason Higgins.
2. The [OWC] erred in determining that David Dawson was allowed to change physicians from Dr. Lawrence Haydel to Dr. Jason Higgins.
3. The [OWC] erred in determining that the present problems with David Dawson’s shoulder were related to a work accident at TGMC.
4. The [OWC] erred in determining that the Employer was required to pay for the care and treatment that David Dawson received from Dr. Jason Higgins.
5. The [OWC] erred in determining that any Second Medical Opinion would be limited.
Dawson filed an answer to TGMC’s appeal seeking additional attorney’s fees for work incurred in having to defend this appeal.
DISCUSSION
Standard of Review
The jurisprudence clearly establishes that in workers’ compensation cases, the appropriate standard of review to be applied by appellate courts is the | ¿‘manifest error-clearly wrong” standard. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556; Smith v. J.E. Merit Constructors. Inc., 2001-2824 (La.App. 1st Cir.11/8/02), 835 So.2d 749, 753. For an appellate court to reverse a workers’ compensation judge’s factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the workers’ compensation judge and that the record establishes that the finding is clearly wrong. See Stobart v. State, through Depariment of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, the reviewing court must do more than simply review the record for some evidence that supports or controverts the workers’ compensation judge’s finding. Smith v. J.E. Merit Constructors, Inc., 835 So.2d at 753. The reviewing court must review the record in its entirety to determine whether the workers’ compensation judge’s finding was clearly wrong or manifestly erroneous. See Stobart v. State, through Depariment of Transportation and Development, 617 So.2d at 882.
The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State, through Depart- *627 merit of Transportation and Development, 617 So.2d at 882. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, through Department of Transportation and Development, 617 So.2d at 882. Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. 7State, through Department of Transportation and Development, 617 So.2d at 883.
Assignment of Error Number One
TGMC first contends that the OWC erred in failing to give more weight to the opinion of Dawson’s treating physician, Dr. Haydel, over the opinion of Dr. Higgins. When faced with the question of whether to accept the opinion of a non-treating physician specialist over the opinion of a treating physician specialist, this circuit has previously held that the trial court ultimately retains the discretion to weigh and consider such competing testimony, despite any applicable presumptions. As set forth by this court in Ponthier v. Vulcan Foundry, Inc., 95-1343 (La.App. 1st Cir.2/23/96), 668 So.2d 1315:
Experts’ testimony may be given different weights depending on their qualifications and the facts upon which their opinions are based. For example, the general jurisprudential rules are that a treating physician’s opinion is given more weight than a non-treating physician, and the testimony of a specialist is entitled to greater weight than a general practitioner. The trial court, however, is not bound to accept the testimony of an expert whose testimony is presumptively given more weight if he finds the opinion is less credible than that of other experts. As the supreme court explained in Middle Tennessee Council v. Ford, 274 So.2d 173, 177 (La.1973):
The weight to be given to the testimony of experts is largely dependent upon their qualifications and the facts upon which their opinions are based. However, the sincerity and honesty of the opinions expressed are matters which the trial judge is in a particularly advantageous position to determine. It is, in effect, in part, a question of credibility, and when the experts are widely disparate in their conclusions, the rule has special relevance.
Ponthier v. Vulcan Foundry, Inc., 668 So.2d at 1317. (Footnotes omitted.) (Emphasis added.)
On review of the record herein, we note that while neither Dr. Haydel nor Dr. Higgins testified at the trial, their respective medical records pertaining to Dawson were introduced. While Dr. Haydel was of the opinion that the tears |sshown on Dawson’s MRI and his shoulder complaints were due to his age, Dr. Higgins opined that the injury to Dawson’s shoulder was caused by trauma. The only shoulder trauma recounted by Dawson to Dr. Higgins and in his trial testimony was the trauma that he sustained in the work-related accident at TGMC in March of 2007. Although both physicians were qualified to give an opinion as to the nature and treatment of Dawson’s shoulder injury and to opine as to whether his condition was related to the March 2007 work accident at TGMC, the OWC had the discretion to evaluate all of the testimony and to determine which expert’s opinion was most credible. This determination cannot be disturbed unless found to be manifestly erroneous. On the record before us, after careful review of the medical records and testimony offered herein, we find the *628 OWC’s conclusions are amply supported. Thus, we are unable to find manifest error in the OWC’s determination.
Thus, we find no merit to this assignment of error.
Assignment of Error Numbers Two and Four
In these assignments of error, TGMC contends that the OWC erred in determining that Dawson was entitled and allowed to change physicians from Dr. Haydel to Dr. Higgins and further erred in determining that the employer was required to pay for the care and treatment that Dawson received from Dr. Higgins.
In upholding Dawson’s decision to seek a second opinion from Dr. Higgins, the OWC relied on LSA-R.S. 23:1121(D),[3] noting that pursuant to LSA-{R.S.9 23:1121(D) “[a]fter all examinations have been conducted, but prior to any order directing the injured employee to return to work, the employee shall be permitted at his own expense to consult with and be examined by a physician of his own choosing.” The OWC further ordered that Dawson would be responsible for payment of the initial visit with Dr. Higgins, but that his employer was required to pay for subsequent treatment from Dr. Higgins, noting that “since this was [Dawson’s] second opinion, the initial visit and ... evaluation has to go on him. But, any subsequent ones, because I am allowing him to switch the change of physician because he felt that Dr. Haydel was no longer working in his best interest and he actually went to someone else, I will allow the change of physician.” On review, we find no error in the OWC so ruling.
Dawson testified that although he had returned to work as a result of financial necessity, he continued to have problems with his shoulder and that these problems became progressively worse. Dawson explained that his condition got to the point where he had to use his right arm to move his left hand out from his pocket because he could not move his shoulder at all. Dawson voiced these complaints to Dr. Guidry, who ordered an x-ray, cat scan, and MRI and sent Dawson back to Dr. Haydel to obtain the results of his reading of the MRI. Dawson testified that Dr. Haydel told him that he had a “couple of tears” in his shoulder, but felt that they were “due to age ... [that] people just live with it ... [and] it’s nothing to worry about.” Dawson testified that he did not like what Dr. Haydel had to say and that he felt that Dr. Haydel just “passed it off.” Dawson testified that he did not feel like he was old enough to be falling apart and that he knew there was a real problem when he had to use one arm to pull the other from his pocket. The OWC specifically found that Dawson was “credible” and that she “believed him.”
| inAccordingly, we reject TGMC’s argument that LSA-R.S. 23:1121(B)[4] prohibit *629 ed Dawson’s change of orthopedists. The OWC specifically found that Dawson’s change of physician, or second opinion by Dr. Higgins, was permitted under LSA-R.S. 2S:1121(D). On review, we find no error in this determination.
Moreover, we note that although Dawson returned to work because he could not afford to be “out of work,” the record shows that he clearly questioned his fitness to return given his ongoing problems with his shoulder, which progressively worsened. Thus, we are unable to find the OWC erred in concluding that Dr. Haydel basically refused to treat him further and effectively “passed it off.” As the OWC noted, Dawson felt that Dr. Haydel was not working in his best interest. In similar circumstances, the decision to allow a claimant to change specialists has been affirmed by other courts. See Morgan v. New Orleans Cold Storage, 603 So.2d 190 (La.App. 4th Cir.1992). On review of the evidence of the record herein, we are unable to find error in the OWC’s decision to allow Dawson to change orthopedic specialists.
Accordingly, given the OWC’s approval of Dawson’s actions in seeking a new physician to address continuing problems arising from his work-related injury, we find no error in the OWC’s ruling that Dawson is responsible for the initial visit and evaluation, and the employer is responsible for any subsequent treatment recommended by the second opinion physician in accordance with luLSA-R.S. 23:1121(D). Luper v. Wal-Mart Stores, 2002-0806 (La.App. 1st Cir.3/28/03), 844 So.2d 329, 336-337.
Thus, we likewise find no merit to these assignments of error.
Assignment of Error Number Three
In its third assignment of error, TGMC contends that the OWC erred in determining that Dawson’s shoulder injuries were related to a work accident at TGMC.
The claimant in a workers’ compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992). Notably, a worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt on the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Hayes v. Louisiana State Penitentiary, 2006-0553 (La.App. 1st Cir.8/15/07), 970 So.2d 547, 555, writ denied, 2007-2258 (La.1/25/08), 973 So.2d 758. Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses, or friends. Corroboration may also be provided by medical evidence. Hayes v. Louisiana State Penitentiary, 970 So.2d at 555.
In determining whether the worker has discharged his burden of proof, the trier of fact should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent “circumstances casting suspicion on the reliability of this testimony.” Bruno v. Har-bert International Inc., 593 So.2d at 361. The OWC’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations, which are not to be disturbed on *630 review unless clearly 112wrong or manifestly erroneous. Bruno v. Harbert International Inc., 593 So.2d at 361.
As noted above, in rendering its findings, the OWC specifically found that Dawson’s testimony was “credible” and that she “believed him.” In determining that Dawson’s shoulder injury was related to the accident in March of 2007 at TGMC, the OWC noted that Dawson’s testimony was corroborated by Dr. Higgin’s report of April 16, 2009, where he noted, “At this point, I certainly feel that there was trauma that caused this injury to his shoulder with the nature of his injury and feel that therapy will not help him and I recommend surgery.”
On review, we find that Dawson met his burden of proving a work-related accident by a preponderance of the evidence. Absent any contradictory evidence in the record by TGMC to cast suspicion on Dawson’s testimony, which was corroborated by Dr. Higgins’s medical findings, we cannot say the decision of the OWC is manifestly erroneous.
Accordingly, this assignment of error also lacks merit.
Assignment of Error Number Five
In its final assignment of error, TGMC contends that the OWC erred in ruling that TGMC was entitled to a second medical opinion, but that any second medical opinion would be limited to the issue of the necessity and type of surgery, as the OWC has determined that Dawson’s injury is related to his work accident in March 2007.
In its oral reasons, the OWC ruled that TGMC would be allowed to seek a second medical opinion “to determine: Is surgery necessary or not or what type of surgery, that can be determined.” Given the OWC’s finding that the injury was work-related, it noted, “if your doctor says, ‘This isn’t related,’ that’s off the table.” However, any finding or ruling on this issue is not mentioned or contained in the July 28, 2011 judgment of the OWC before us.
13Appeals are taken from the judgment, not the reasons for judgment. See LSA-C.C.P. arts. 1917, 1918, 2082 and 2083; Greater New Orleans Expressway Commission v. Olivier, 2002-2795 (La.11/18/03), 860 So.2d 22, 24. Courts of appeal are constrained to review judgments on appeal. Huang v. Louisiana State Board of Trustees for State Colleges and Universities, 99-2805 (La.App. 1st Cir.12/22/00), 781 So.2d 1, 6.
Accordingly, this assignment of error is pretermitted.
Answer to Appeal
Dawson filed an answer to the instant appeal seeking attorney’s fees incurred for work performed in defending this appeal. After having reviewed this matter, we do not find that the award of attorney’s fees is warranted under the circumstances. Accordingly, Dawson’s request in the answer to appeal is denied.
CONCLUSION
Based on the above and foregoing reasons, the July 28, 2010 judgment of the OWC is affirmed. Dawson’s answer to appeal is denied. Costs of this appeal are assessed against the defendant/appellant, Terrebonne General Medical Center.
AFFIRMED.
McCLENDON, J., dissents and assigns reasons.

. Although Dawson initially returned to his employment at the maintenance department at TGMC, he subsequently left that employment and, at the time of trial, he was employed in the maintenance department at Fletcher Technical Community College.

. Dawson was 44 years old at the time of this appointment.

. In particular, LSA-R.S. 23:1121(D) provides, as follows:
After all examinations have been conducted but prior to any order directing the injured employee to return to work, the employee shall be permitted, at his own expense, to consult with and be examined by a physician of his own choosing. Such report shall be considered in addition to all other medical reports in determining the injured employee's fitness to return to work. Should disagreement exist, after such consultation and examination, as to the fitness of the employee to return to work, the provisions of R.S. 23:1123 shall be followed.

. Pursuant to LSA-R.S. 23:1121(B):
(1) The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S 23:1124(B), when denied his right to an initial physician of choice. After his initial choice the employee shall obtain *629 prior consent from the employer or his workers’ compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.