ANN WASHINGTON, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD SARAH WYNN
v.
JACULEYN CELESTINE AND STATE FARM INSURANCE COMPANY
No. 2008 CA 2073
Court of Appeals of Louisiana, First Circuit.
March 27, 2009
Not Designated for Publication
JEFF R. NICHOLSON, CHAD A. DUDLEY, Attorneys for Plaintiffs-Appellees Ann Washington, Individually and On Behalf of Her Minor Child, Sarah Wynn
DARRELL J. LOUP Attorney for Defendants-Appellants Jaculeyn Celestine and State Farm Mutual Automobile Ins. Co.
Before: PARRO, McCLENDON, AND WELCH, JJ.
WELCH, J.
In this appeal, defendants, Jaculeyn Celestine and State Farm Mutual Automobile Insurance Company, challenge a judgment rendered in favor of plaintiff, Ann Washington, individually and on behalf of her minor child, finding Ms. Celestine solely at fault in causing an automobile accident and awarding damages in the amount of $39,999.00. We affirm.

BACKGROUND
This lawsuit arises from an accident occurring in the early evening on December 21, 2005, on Greenwell Street near its intersection with Hartford Avenue in East Baton Rouge Parish. Ms. Washington was driving westbound on Greenwell Street. After Ms. Washington passed through the intersection of Greenwell Street and Hartford Avenue, her vehicle left the roadway, ran into a ditch on the northwest side of the intersection, and overturned. Ms. Washington filed this lawsuit individually and on behalf of her minor daughter on December 5, 2006, against Ms. Celestine and her insurer, State Farm (sometimes collectively referred to as defendants). Ms, Washington alleged that Ms. Celestine, who was driving eastbound on Greenwell Street, suddenly and without warning, turned in front of her vehicle, forcing her to take evasive action, and causing her to sustain injuries to her shoulder, neck, and back as a result.
Damages were stipulated to, and the trial proceeded on the sole issue of liability. Ms. Washington and Ms. Celestine gave differing accounts of the events leading to the crash. Ms. Washington testified that as she approached Hartford Avenue, she first observed the Celestine vehicle when its blinker was activated and the vehicle started moving as though it would make a left turn in front of her. She stated that when she saw the vehicle turning toward her lane, she was unsure whether it would stop or continue, so she took evasive action to avoid a collision. Ms. Washington testified that Ms. Celestine's vehicle was "barely" in her lane when she reacted and drove to her right to avoid a collision. In her written statement following the accident, Ms. Washington stated that the vehicle in front of her "went to turn left" and she went to the right to avoid hitting the vehicle.
Ms. Celestine, who was travelling eastbound on Greenwell Street, claimed that she saw Ms. Washington cross the center line into her lane of travel, causing Ms. Washington to lose control of her vehicle. She thought that Ms. Washington was probably distracted because Ms. Washington was not driving straight on Greenwell Street. Ms. Celestine testified that she did not have any intention to turn left onto Hartford Avenue because she was travelling to visit a patient who lived further east on Greenwell Street past its intersection with Hartford Avenue. Ms. Celestine insisted that she kept going straight on Greenwell Street through the intersection with Hartford Avenue, did not put her blinker on to signal a left turn at Hartford Avenue, and at no time attempted to turn left onto Hartford Avenue. She testified that after she passed Ms. Washington's vehicle, she looked in her rear-view mirror and saw the Washington vehicle go into the ditch. Ms. Celestine stated that because she is a nurse, she went back to the scene to render aid to the occupants of the vehicle. At trial, Ms. Celestine denied telling the officer investigating the accident that she was making a left turn on Hartford Avenue prior to Ms. Washington's accident.
Deputy Patty Freeman, a detective with the East Baton Rouge Parish Sheriffs Office, investigated the accident. Deputy Freeman took a verbal and written statement from Ms. Celestine at the scene of the accident. Deputy Freeman testified that Ms. Celestine told her that she was making a left turn onto Hartford Avenue, but did not make contact with Ms. Washington's vehicle. Ms. Celestine also gave a written statement to Deputy Freeman, which did not contain a reference regarding the left turn. After investigating the accident, the officer concluded that if Ms. Celestine's vehicle had in fact turned left in front of Ms. Washington onto Hartford Avenue, either a collision would have occurred or Ms. Washington's vehicle would have left the roadway before the intersection, rather than travelling through the intersection and ending up on the northwest side of the intersection. Therefore, she did not believe that Ms. Celestine had turned left onto Hartford Avenue prior to Ms. Washington's leaving the roadway.
In support of Ms. Celestine's version of the accident, the defendants offered the testimony of Wayne Winkler, who was accepted by the court as an expert in accident reconstruction. The purpose of Mr. Winkler's reconstruction was to determine whether the evidence supported a scenario in which Ms. Celestine made a sudden left turn onto Hartford Avenue in front of Ms. Washington's vehicle. In so doing, he reviewed the police report and the depositions of Ms. Washington, her son, who was a passenger in the vehicle, Ms. Celestine, and Deputy Freeman. Mr. Winkler took measurements at the scene and made calculations in an attempt to determine how long it would have taken Ms. Celestine to completely clear the westbound lanes in which Ms. Washington was travelling and to determine where Ms. Washington's vehicle would have been when Ms. Celestine began making the left turn. He determined that based on the length of the Celestine vehicle and the width of the westbound lane in which Ms. Washington was travelling, it would have taken at least three seconds for Ms. Celestine to clear the intersection. Using the three-second figure, he then attempted to determine the closest Ms. Washington's vehicle could have been to the intersection when the Celestine vehicle was turning left onto Hartford Avenue. Mr. Winkler surmised that if Ms. Washington was three seconds from the intersection and was travelling at the speed limit of 35 m.p.h., she would have been 150 feet east of the intersection when Ms. Celestine began making her left turn. He stated that Ms. Washington would have had sufficient time to stop the vehicle before reaching the intersection or to slow her vehicle to allow the turning vehicle to clear.
Mr. Winkler testified that if Ms. Washington's vehicle had been run off of the road in response to a sudden left turn by Ms. Celestine, he would have expected Ms. Washington's vehicle to leave the roadway prior to the intersection, rather than in the northwest side of the intersection where Ms. Washington's vehicle came to rest. He also noted the absence of skid marks on the roadway, which one would expect to find if Ms. Celestine had turned suddenly in front of Ms. Washington. Based on his time/distance calculations, the location of Ms. Washington's vehicle, and the absence of skid marks before the intersection, Mr. Winkler opined that it was physically impossible for Ms. Celestine to have made a left turn onto Hartford Avenue in front of Ms. Washington without having a collision between the vehicles and for Ms. Washington to end up in the northwest quadrant ditch. Therefore, he opined, the accident happened as Ms. Celestine described it and not the way Ms. Washington described it.
On cross examination, Mr. Winkler admitted that his calculations were based solely on Ms. Washington's claim that Ms. Celestine turned left in front of her at Hartford Avenue to prove that the accident did not occur that way. He admitted that he had no evidence to indicate where, if Ms. Celestine had turned left, her vehicle would have been because it was his opinion that there was no left turn. When questioned by the trial court as to how the accident occurred, Mr. Winkler stated it appeared that Ms. Washington had simply been inattentive and ran off the road.
After reviewing the evidence on the conflicting versions of the accident, the trial court declined to give Mr. Winkler's testimony any weight as it related to reconstructing the accident. Instead, the trial court gave weight to Deputy Freeman's testimony that Ms. Celestine told her she was making a left turn on Hartford Avenue. Considering all of the evidence, the trial court concluded that as Ms. Washington approached Hartford Avenue, Ms. Celestine was attempting to make a left turn; therefore, to avoid the accident, Ms. Washington went off to the northwest corner of the intersection, and Ms. Celestine's vehicle continued on to make the left turn after Ms. Washington's vehicle had passed. Therefore, the court concluded that Ms. Washington was making an evasive move to try to avoid the accident, and Ms. Celestine's attempt to make a left turn was the sole cause of the accident. Defendants appealed.

DISCUSSION
The trial court's liability finding is a factual determination which may not be reversed on appeal in the absence of manifest error. The two part test for the appellate review of a factual finding is: (1) whether there is a reasonable factual basis in the record for the court's finding, and (2) whether the record further establishes that the finding is not manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993); Frankel v. Exxon Mobil Corporation, XXXX-XXXX, p. 7 (La. App. 1st Cir. 8/10/05), 923 So.2d 55, 63. The issue to be decided by this court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Stobart, 617 So.2d at 882. When factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Frankel, XXXX-XXXX at p. 7, 923 So.2d at 63. However, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the story, an appellate court may find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. Stobart, 617 So.2d at 882. Nevertheless, where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.
Defendants contend that the trial court's liability determination, although based on a credibility determination, is manifestly erroneous because Ms. Washington's testimony was uncorroborated and was contradicted by the physical evidence and the testimony of Deputy Freeman and Mr. Winkler. They further submit that Ms. Celestine's version of the events was corroborated by the physical evidence and the testimony of Deputy Freeman and Mr. Winkler. Defendants urge that the trial court should have accepted Mr. Winkler's expert opinion that Ms. Celestine's version of the accident was the only plausible version, as there was no expert testimony to contradict Mr. Winkler's testimony. In short, they argue, the trial court committed manifest error by totally rejecting the testimony of the accident reconstructionist and substituting its erroneous interpretation of the accident report in reaching the liability determination. Alternatively, defendants suggest that Ms. Washington should be assessed with the lion's share of liability should this court determine the evidence indicates a case of comparative negligence.
In response, Ms. Washington submits that the trial court's credibility determination was reasonable in light of the record. She notes that the court was faced with two possibilities: either Ms. Celestine was turning left on Hartford Avenue and caused the accident or Ms. Celestine was going straight through the intersection and had nothing to do with Ms. Washington's leaving the roadway. Ms. Washington urges that the trial court's choice between the two scenarios is not manifestly erroneous or clearly wrong. She stresses that the trial court's credibility determination was not based solely on her testimony, but also on Deputy Freeman's testimony that Ms. Celestine told her she was making a left turn onto Hartford Avenue, as well as the fact that Ms. Celestine's trial testimony directly contradicted what she told the officer at the scene of the accident.
Upon reviewing the record, we find no manifest error in the trial court's credibility determination. A trial court is not bound by the testimony of an expert witness, and the effect and weight of an expert's testimony is within the broad discretion of the trial court. Wade v. Teachers' Retirement System of Louisiana, XXXX-XXXX, pp. 8-9 (La. App. 1st Cir. 6/9/06), 938 So.2d 103, 108, writ denied, 2006-2024 (La. 11/3/06), 940 So.2d 673. We find no abuse of discretion in the trial court's refusal to give weight to Mr. Winkler's testimony or his opinion as to the cause of the accident. Mr. Winkler admitted that all of his measurements and calculations were directed towards a single objective: determining whether Ms. Celestine made a sudden left turn in front of Ms. Washington. However, Mr. Winkler admitted he made no calculations based on Ms. Celestine's version of the accident and thus, there was no physical or expert testimony to support Ms. Celestine's claim that Ms. Washington veered into her lane of travel, overcorrected and landed in the ditch as a result of a driving error on Ms. Washington's part.
While the evidence may have shown that it was impossible for Ms. Celestine to complete a left hand turn directly in front of Ms. Washington's approaching vehicle without an impending collision, the trial court clearly made a credibility determination in accepting Ms. Washington's trial testimony that Ms. Celestine's vehicle had started to enter her lane of travel when she veered off the roadway to avoid a collision. This credibility determination is supported by Deputy Freeman's testimony that Ms. Celestine told her at the scene of the accident that she was turning left on Hartford Avenue prior to the collision. Because the trial court's liability determination is based on a credibility determination that is reasonably supported by the record, we find no error in that determination.

CONCLUSION
For the foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellants, Jaculeyn Celestine and State Farm Mutual Automobile Insurance Company.
AFFIRMED.
McCLENDON, J., concurs and assigns reasons.
While I find Ms. Washington's version of the accident to be questionable, I cannot say that it is so implausible that the trial court's credibility determinations must be overturned. Thus, I am constrained to agree with the affirmance of the judgment.