NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2018 CA 1248

AMY L. STOODT

VERSUS

PATRICIA C. BEAUVAIS, WIFE OF/AND CHRISTOPHER B. BEAUVAIS,
JENNIFER RICE AND DORIAN M. BENNETT, INC. D/B/A DORIAN
BENNETT SOTHEBY'S INTERNATIONAL REALTY

Judgment rendered **AUG 0 5 2019.**

* * * * *

On Appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
No. 2016-11248, Div. "A"

The Honorable Raymond S. Childress, Judge Presiding

* * * * *

Bruce M. Danner                          Attorney for Plaintiff/Appellant
Madisonville, Louisiana                  Amy L. Stoodt


Jesse L. Wimberly, III                   Attorneys for Defendants/Appellees
Jesse L. Wimberly, IV                    Patricia C. Beauvais and Christopher
Elizabeth W. Wiedemann                   B. Beauvais
Mandeville, Louisiana


* * * * *

BEFORE: McDONALD, CRAIN, AND HOLDRIDGE, JJ.

**HOLDRIDGE, J.**

Plaintiff, Amy L. Stoodt, appeals a judgment rendered in favor of defendants, Patricia C. Beauvais and Christopher B. Beauvais, dismissing this lawsuit seeking damages for the breach of an alleged right of first refusal agreement. We affirm.

## BACKGROUND

On April 15, 2013, the Beauvaises sold a 5.29-acre tract with a home thereon, located in Bush, Louisiana, to Ms. Stoodt. On March 24, 2016, Ms. Stoodt filed this lawsuit seeking to recover damages from the Beauvaises, asserting that the Beauvaises gave her a right of first refusal on certain property adjacent to her 5.29-acre tract, but sold the property subject to that right to third parties without notifying her in advance of the sale or offering her the opportunity to purchase the property, in violation of the right of first refusal agreement. Ms. Stoodt also sued Jennifer Rice and Dorian M. Bennett, Inc., d/b/a Dorian Bennett Sotheby's International Realty (Bennett), real estate agents who represented the Beauvaises in connection with Ms. Stoodt's purchase of the 5.29-acre tract. Ms. Stoodt alleged that Ms. Rice acted as a dual agent in the sale, and that the breach of Ms. Rice's fiduciary duties to Ms. Stoodt resulted in the breach of the right of first refusal agreement.

In her petition, Ms. Stoodt asserted that although Louisiana law granted her a right of specific performance for a breach of a right of first refusal agreement, such remedy was no longer in her interest as the property had been transferred to third parties, whose interests were protected by the Louisiana Public Records Doctrine because her right of first refusal agreement was never recorded. Instead, Ms. Stoodt sought to recover from the defendants a full refund of the purchase price of the 5.29-acre tract and all monies expended for improvements, or

2

alternatively, the loss of value in her property. She also asked for attorney's fees based on a clause in the purchase agreement.

Following the conclusion of a bench trial, during which considerable documentary and testimonial evidence was adduced, the trial court rendered judgment in favor of all of the defendants, dismissing Ms. Stoodt's claims against them with prejudice. In written reasons for judgment, the court found that there was sufficient confusion in the legal description of the land subject to the right of first refusal so as to render the right of first refusal unenforceable. The court further found that Ms. Rice owed no duty to Ms. Stoodt when she listed the property as she was not representing Ms. Stoodt at the time, but was representing the Beauvaises.

Ms. Stoodt appealed, challenging only that part of the judgment dismissing her claim against the Beauvaises.

## DISCUSSION

A party who demands performance of an obligation must prove the existence of the obligation. La. Civ. Code art. 1831; **Hoskins v. State, Division of Administration, Office of Community Development,** 2018-1089 (La. App. 1 Cir. 2/25/16), ____ So.3d ____, ____ (2019WL927775 *3). The existence of the contract and its terms must be proven by a preponderance of the evidence. **Id.** The existence or non-existence of a contract is a question of fact, and the trial court's determination of this issue will not be disturbed unless manifestly erroneous or clearly wrong. **Read v. Willwoods Community,** 2014-1475 (La. 3/17/15), 165 So.3d 883, 888. In order to reverse the trial court's determination that an enforceable right of first refusal agreement was not confected between the parties, this court must find from the record that a reasonable factual basis does not exist for the finding and that the record establishes that the finding is clearly wrong

3

(manifestly erroneous). **Stobart v. State, Department of Transportation and Development**, 617 So.2d 880, 882 (La. 1992). The issue to be resolved by this court is not whether the trial court is right or wrong, but whether the trial court's conclusion was a reasonable one. **Id**. If the findings of the trial court are reasonable in light of the record reviewed in its entirety, this court may not reverse even though convinced that had it been sitting as the trier of fact, we would have weighed the evidence differently. **Stobart**, 617 So.2d at 882-883.

Louisiana Civil Code article 2625 provides for a right of first refusal. Pursuant to that provision, '[a] party may agree that he will not sell a certain thing without first offering it to a certain person. The right given to the latter in such a case is a right of first refusal that may be enforced by specific performance." Louisiana Civil Code article 2626 further provides that '[t]he grantor of a right of first refusal may not sell to another person unless he has offered to sell the thing to the holder of the right on the same terms, or on those specified when the right was granted if the parties have so agreed." The right of first refusal regarding the sale of an immovable is a contract that must be in writing. La. C.C. arts. 2623 and 2629; **Marler v. Jarrell**, 2016-0685 (La. App. 1 Cir. 7/13/17) (2017 WL 2982523), writ denied, 2017-1408 (La. 12/5/17), 231 So.3d 25.

In this case, the court found that Ms. Stoodt failed to prove the existence of an enforceable right of first refusal because the description of the property subject to the right of first refusal was not sufficiently explicit so as to allow the court to determine what property was subject to the right of first refusal. Essentially, the court determined that the "certain thing" requirement of La. C.C. art. 2625 was not met in this case. We shall review the trial court's finding that Ms. Stoodt failed to prove the existence of an enforceable right of first refusal on property sold by the Beauvaises to third parties under the manifest error standard of review.

4

The record reflects that in 2012, the Beauvaises hired Ms. Rice to sell their 36-acre tract of rural property, on which a custom home, a guesthouse, a workshop, a one-acre pond, and a large shed were located. The property was marketed under three different listings: the home and 36 +/– acres with all of the improvements thereon for $690,000.00; the home +/- 13 acres and all improvements thereon for $540,000.00; and the home and +/- 4 acres for $490,000.00.

In January of 2013, the Beauvaises, represented by Ms. Rice, and Ms. Stoodt, represented by real estate agent Courtney Barrilleaux, began negotiating for Ms. Stoodt to purchase the home and additional acreage. On January 22, 2013, Ms. Stoodt signed a purchase agreement entitled "Louisiana Residential Agreement to Buy or Sell" to purchase the home and land measuring "approximately 4.5 acres to be determined by [a] survey" for the price of $470,000.00. That day, Mr. Beauvais sent Ms. Rice a memo containing comments regarding the Stoodt offer, in which he noted that all had agreed that 5 acres was what the parties had discussed, to which he attached a rough drawing showing what was described in the offer and what the Beauvaises were proposing to be the 5 acres. This drawing, which was also introduced as Exhibit J2 and upon which Ms. Stoodt bases her right of first refusal claim, depicts a division of the 36-acre tract described as follows: Parcel A- 18.25 acres +/-; Parcel B- 4.65 acres +/-; and a 13.1 acre +/- parcel, on which the home, a pond and, other buildings on the property were penciled in. The drawing shows two natural boundaries of the 13.1-acre tract: Watts Thomas Road, which fronted the home, and Jim Williams Road. On January 22, 2013, Ms. Stoodt signed an addendum to the purchase agreement. The addendum stated that the parties agreed that a legal survey would be completed to establish the "to be purchased parcel" prior to Ms. Stoodt's

inspection, that "8-9 acres that is manicured lawn today that will not be purchased shall be maintained on a minimum basis to include mowing reasonably frequent intervals to be agreed between buyer and seller" and the following language on which Ms. Stoodt's claim is based:

> Purchase [sic] to have first right of refusal on remaining property 8 to 9 acres that would have been included in a 13 acre plus the house purchase. (see exhibit A).

The parties further agreed that the specific requests associated with the land include minimum amounts of land at the back of a mother in law house and the on the sides of a concrete pad at the carports, that the land to the south be symmetrical such that the house is at or near the center line of the "to be purchased parcel" and that there be a 50 foot set-back on all sides of the "to be purchased parcel."

Exhibit A attached to the January 22, 2013 addendum is a drawing prepared by Mr. Beauvais using a computer program and is dated January 24, 2013. It shows the home situated on a 5.29-acre tract of land, facing Watts Thomas Road, and containing 50-foot setbacks on the remaining 3 sides of the property. A pond is shown to the rear of and outside of the 5.29-acre tract. The exhibit references the coordinates of the entire 36-acre tract. However, there is no reference to a 13 or 13.1-acre tract on Exhibit A, and there is no reference whatsoever on this exhibit as to what property was subject to Ms. Stoodt's right of first refusal. The Beauvaises agreed to the addendum to the purchase agreement, signing that document on January 24, 2013. A counteroffer was made by Ms. Stoodt on January 25, 2013, to amend the purchase offer to read "+/-5.29-acre tracts, as per attached (exhibit 'A') dated 1/24/13," which was accepted by the Beauvaises on January 26, 2013.

Following the execution of a purchase agreement, Mr. Beauvais commissioned a survey which subdivided the 36-acre tract into 2 lots: Lots 2-A

6

and 2-B. Lot 2-B depicts the 5.29-acre tract and home thereon, while Lot 2-A reflects the remaining property. There is no reference in this survey, dated February 6, 2013, to the property on which Ms. Stoodt claims to have a right of first refusal.

On April 15, 2013, the Beauvaises and Ms. Stoodt executed an Act of Sale of the 5.29-acre tract with the home and other improvements thereon. The Act of Sale references the February 2013 survey. The Act of Sale contains no mention of Ms. Stoodt having a right of first refusal over any of the remaining property.

At the end of April, 2015, Ms. Stoodt notified Mr. Beauvais through text messages that she was preparing to sell her home. She apprised Mr. Beauvais that realtors had asked about other acreage, and she informed them that Mr. Beauvais still owned the property and had been interested in selling the property when she purchased the home two years earlier. Mr. Beauvais thanked Ms. Stoodt for the "heads up" and asked her whether she still required notification if he decided to put the land up for sale. He stated, "I think you have some sort of right of first refusal." Ms. Stoodt responded that the first right was "still in play technically by our sales agreement." She continued, "[e]ven though less likely I would exercise it." Mr. Beauvais responded that he would try to cut the grass more often so that the property would look nice for her showings, and informed Ms. Stoodt that if she found someone who wanted her house and more land, the Beauvaises would work with her on that, to which Ms. Stoodt responded, "Absolutely-will keep you posted."

On May 6, 2015, Ms. Stoodt listed her 5.29-acre tract and the improvements thereon for sale with Ms. Rice's agency for the asking price of $675,000.00. The advertisement for the sale listed, with respect to "grounds," a "1st Right on Land," and that the "[p]rior owner and [o]wner of acreage willing to sell additional land."

7

On May 27, 2015, the Beauvaises signed an agreement with Ms. Rice's agency to list Lot 2-A, measuring 31.5 acres, for sale. Ms. Stoodt's listing with Ms. Rice's agency was cancelled on July 10, 2015.

The record contains an undated email authored by Mr. Beauvais in which he mentions having a survey done that day, and he expected a final plat soon, at which time he would begin the re-subdivision process. He wrote, "Funny Note--Ran into [Ms. Stoodt] while surveying. Very nice to me. Told her what we were doing but didn't state that a portion of it was under contract. No bites on her house-- surprised?

On December 4, 2015, the Beauvaises sold 12 acres of the remaining 31 acres to Dona and Thompson Waller, designated as Lot 2-A3 on a survey prepared on September 25, 2015. The September 25, 2015 survey shows the re-subdivision of Lot 2-A into Lots 2-A1, 2-A2, 2-A3, and 2-A4. Lots 2-A1 and 2-A2 are adjacent to Ms. Stoodt's 5.29-acre tract, while Tract 2-A3 is partially adjacent to and partially to the rear of the 5.29-acre tract, and includes the pond that was omitted from Ms. Stoodt's sale. On February 3, 2016, the Beauvaises sold Lot 2-A2 to the Wallers.

On January 23, 2017, Ms. Stoodt filed a Notice of Lis Pendens into the registry of St. Tammany Parish, referencing her lawsuit filed against the Beauvaises. In the notice, Ms. Stoodt stated that the object of the lawsuit was to determine the existence of a right of first refusal regarding property adjacent to Lot 2-B, comprised of "eight (8) to nine (9) acres which formed a portion of the original thirteen (13) acre parcel offered for sale and from which [Ms. Stoodt] purchased 5.290 acres (Lot 2-B) and which are now comprised of Lots 2-A1, 2-A2, and a portion of Lot 2-A3."

8

On January 31, 2017, the Beauvaises sold Lot 2-A1 to Michael Slemmer, Jr., containing 2.339 acres, also adjacent to Ms. Stoodt's 5.29-acre tract and on which Ms. Stoodt claimed to have a right of first refusal. This sale was made without a title examination.

Testimonial Evidence

Mr. Beauvais testified when he initially listed his 36-acre tract for sale, Ms. Rice suggested that it be marketed in different sizes at different price points. One of the listings marketed the property as being comprised of 13 acres, a custom-built home, and all of the improvements on the property. This 13-acre tract was bounded on the north and west by roadways. Mr. Beauvais acknowledged that he prepared Exhibit J2 from a program on his computer, and admitted that he was willing to sell what appeared on the MLS listing and on Exhibit J2 for $540,000.00.[1] Mr. Beauvais further testified that Exhibit J2 was done to illustrate a way a buyer could purchase 13 acres, the home, and other features of his property.

Mr. Beauvais testified that he prepared Exhibit A, attached to the purchase agreement, which depicts the 5.29-acre tract contained in four boundary lines, but nothing else on that document. He further admitted that if one was facing the home, everything to the left of the 5.29-acre tract to the public road, and to the public road to the front of the property, was contained in the 13.1 acres depicted in Exhibit J2. However, he could not recall having provided Exhibit J2 to Ms. Stoodt, and did not remember reviewing or discussing the property depicted in that document with Ms. Stoodt. Mr. Beauvais was unable to say if the reference to the

---

[1] During Mr. Beauvais' testimony, when he was asked to look at Exhibit J3, reflecting the purchase agreement, his attorney made a continuing to the use of parole evidence to contradict the terms of the document. The trial court noted the objection and its continuing nature, but stressed that if the court was to comprehend what the right of first refusal contemplated, it was necessary for the court to receive evidence on the intent of the parties.

9

13 acres on Exhibit A was intended to reference the 13.1 acres reflected on Exhibit J2. He pointed out that Exhibit A does not have any reference to the 13-acre tract and insisted that he did not know where the 13 acres referenced in Exhibit A was located. He also denied knowing where the 8 or 9 acres referenced in the right of first refusal were located, explaining that Exhibit A had no reference to 8, 9, or 13 acres.

Mr. Beauvais admitted that if one subtracted the 4.5 acres listed originally on the purchase agreement from 13 acres, that figure would be between 8 and 9 acres. However, Mr. Beauvais did not recall discussing the right of first refusal with Ms. Stoodt before signing the purchase agreement and the counteroffer, and was not sure what Ms. Stoodt wanted, but thought that Ms. Stoodt wished to stay on the property for some time and wanted to be able to purchase additional property at a future date. He did not recall discussing with Ms. Stoodt any intention on her part to protect her property from future developments.

Mr. Beauvais acknowledged that he agreed, in the purchase agreement, to maintain 8 to 9 acres of property that would not be purchased by Ms. Stoodt., and that he did cut grass for Ms. Stoodt to fulfill this condition; however, he never cut 8 or 9 acres because the property was partially wooded. He stated that he mowed about 4 acres. When asked whether the 8 to 9 acres he agreed to maintain prompted his memory as to where the 8 or 9 acres referred to in the right of first refusal was located, Mr. Beauvais responded that it did not assist him at all, explaining that it made it more confusing for him because the place they referenced he would maintain was half in the woods. However, Mr. Beauvais admitted that he did recognize the methodology in place to determine the amount of acreage the right of first refusal contemplated.

Mr. Beauvais could not recall walking the property with Ms. Stoodt prior to her purchase of the 5.29-acre tract and did not recall having discussions alone with Ms. Stoodt. According to Mr. Beauvais, all discussions took place with his agents, Ms. Stoodt's agent, or both. Mr. Beauvais specifically could not recall a conversation with Ms. Rice, Ms. Stoodt, and another real estate agent during which Ms. Rice advised him not to sign the document containing the right of first refusal language because it would affect the marketability of the remaining portion of his property.

Mr. Beauvais testified that it was contemplated that a surveyor had to prepare an official plat of the property, which had to be resubdivided, before the property could be sold to Ms. Stoodt. He acknowledged that when he appeared at the closing on the property, he believed Ms. Stoodt had a right of first refusal, and after the Act of Sale was executed, he believed that Ms. Stoodt had such a right. Mr. Beauvais also admitted that the three lots sold to third parties were part of the 13-acre tract depicted on Exhibit J2. According to Mr. Beauvais, neither he nor anyone on his behalf submitted any offers received from the third parties to Ms. Stoodt for her consideration prior to selling those lots.

Mr. Beauvais was convinced that Ms. Stoodt knew in fact that the property on which she claims the right of first refusal was being sold to others and did nothing to express any objection thereto. He explained that in 2015, he was made aware that Ms. Stoodt wanted to sell her property, and he recommended that she hire Ms. Rice as her agent. Mr. Beauvais testified that he told Ms. Stoodt in 2015 that he had a pending agreement on the back 12 acres of property when he spoke to her while he was having the property surveyed for another re-subdivision. However, according to Mr. Beauvais, Ms. Stoodt said nothing at that time and did not say that she wanted to buy some of the property. Mr. Beauvais testified that

Ms. Stoodt never offered to buy more land after her purchase, and he did not believe that Ms. Stoodt was interested in purchasing more property from him because she was trying to sell her own property and leave town.

Ms. Barrilleaux, who had been a realtor for approximately one year when she represented Ms. Stoodt in the purchase negotiations, acknowledged that she helped prepare the purchase agreement and recalled discussing Ms. Stoodt's right of first refusal. While she could not remember the specific property subject to the right of first refusal, she believed it was the land adjacent and to the left of the home on the property, and that the 13-acre tract included the land facing Ms. Stoodt's home from Thomas Watts Road to the left, or to the north of Ms. Stoodt's property. Ms. Barrilleaux agreed that the MLS listing of the 13-acre tract and Exhibit J2 were related. Ms. Barrilleaux acknowledged that there was no way to tell where the boundaries of the property subject to the right of first refusal were located by looking at Exhibit A to the purchase agreement. She could not recall the parties having discussed the eastern boundary of the land subject to the right of first refusal during negotiations. Ms. Barrilleaux recalled sitting at a table in the Beauvaises' home discussing the purchase agreement and also recalled discussing the right of first refusal, but could not recall if that discussion took place at that time or if all the parties were present when the right of first refusal was discussed.

Ms. Barrilleaux testified that she asked the closing attorney to send Ms. Stoodt all of the documents a few days in advance of the sale of the 5.29-acre tract for Ms. Stoodt to review. She believed Ms. Stoodt had a copy of the Act of Sale prior to going to the notary's office to execute it, and stated that Ms. Stoodt made no objection to her about the language of the Act of Sale. Ms. Barrilleaux was present when the Act of Sale was executed, and she did not remember if the right of first refusal was not referenced in that document. However, neither Ms.

12

Barrilleaux nor Ms. Stoodt brought the omission to the attention of the attorney who handled the closing, and no one at the closing discussed the right of first refusal. Ms. Barrilleaux further testified that Ms. Stoodt never contacted her after the sale to ask about the right of first refusal and never told her that the Beauvaises were selling the property on which Ms. Stoodt thought she had a right of first refusal.

Ms. Rice, a realtor for 25 years, testified that the listing she prepared referencing the sale of a 13-acre tract with the home located thereon was intended to be a "floating description" of the property and did not reference any particular property line. She stated that she prepared the 13-acre MLS listing and she was not thinking of any specific 13 acres when she created the listing. She noted that there were no drawings attached to the MLS listing and that no survey had been done at the time that she listed the property. Ms. Rice testified that she has done right of first refusals many times and never went to closing without a separate document specifying the right of first refusal. She emphasized that the right of first refusal at issue did not specify the 13 acres subject to it and did not specify the type of right of first refusal, and testified that she anticipated the preparation of another document to go along with it, as she had done every time she handled a right of first refusal.

Ms. Rice denied having advised the Beauvaises not to sign an agreement with a right of first refusal in it. She admitted that when she went to the closing for the sale of the 5.29-acre tract, she thought Ms. Stoodt had a right of first refusal. However, she anticipated further documents to be prepared so as to clarify the right of first refusal. Ms. Rice acknowledged that when she listed Ms. Stoodt's property for sale in 2015, a right of first refusal was referenced in connection with the property offered for sale. Ms. Rice testified that she talked to Ms. Stoodt about

13

buying additional acreage, and Ms. Stoodt replied that she was not in a position to buy it nor did she want to buy any additional acreage. Ms. Rice admitted that, after listing Ms. Stoodt's property for sale, she had no intention to submit any offers made on the Beauvaises' remaining property to Ms. Stoodt for her consideration, and did not relay offers to Ms. Stoodt on the property sold to the Wallers and Mr. Slemmer. She also acknowledged that she never told any prospective purchaser when marketing Ms. Stoodt's property that Ms. Stoodt had a right of first refusal on the Beauvaises' property. Ms. Rice explained that her reason for not taking any of these actions was because the Beauvaises had offered the property to Ms. Stoodt and she declined to buy it. She testified that when she represented Ms. Stoodt in listing her property for sale, Ms. Stoodt advised her that she was not interested in buying any more property because she was trying to leave town. At the same time Ms. Rice listed Ms. Stoodt's property for sale, she was also marketing the remaining acreage on behalf of the Beauvaises. Ms. Rice stated that she was marketing both properties so that someone could purchase Ms. Stoodt's property and additional acreage owned by the Beauvaises. Ms. Rice testified there was no doubt in her mind that Ms. Stoodt knew that these properties were being marketed for sale.

Ms. Stoodt testified that she had the MLS listing, marketing the property with the home and +/-13 acres, before she submitted her offer to the Beauvaises. She testified that she walked part of the 13-acre tract she was considering buying with Mr. Beauvais and with her realtor. She stated that they discussed the boundaries of the property: a point behind the sheds, and two roads which actually intersected each other. Ms. Stoodt stated that her realtor also gave her the drawing depicted in Exhibit J2 before she submitted her offer. Ms. Stoodt testified that she and the Beauvaises, Ms. Rice, and Ms. Barrilleaux all met at the Beauvaises' home

to clarify some of her concerns. She testified that they discussed her right of first refusal at the meeting, and it was a condition of her offer because it was critical for her to be able to protect the investment she would be making. According to Ms. Stoodt, Ms. Rice advised the Beauvaises not to agree to the right of first refusal because it could damage the marketing of their property. Ms. Stoodt testified that during their discussions, she expressed an interest in more than the 4 acres that was part of one of the MLS listings and less than the 13 acres that was part of another MLS listing if the Beauvaises were agreeable to a right of first refusal on that 13 acres.

Ms. Stoodt testified that she wrote the language of the right of first refusal in her counteroffer, which required a survey to define the purchased property. According to Ms. Stoodt, what she intended in the right of first refusal could be determined by simple math: subtract between the 4 or 5 acres she thought she would be purchasing, leaving 8 to 9 acres on which she would have a right of first refusal. If the survey showed the land she was purchasing was less than 4 acres, the right of first refusal would cover 9 acres; however, if the survey showed she was purchasing 5 acres, the right of first refusal would cover 8 acres of the 13-acre tract. According to Ms. Stoodt, once the survey demonstrated that she was purchasing 5.29-acre tracts, the amount of acreage subject to the right of first refusal decreased to 7.71 acres.

Ms. Stoodt admitted that she did not recall a specific discussion with the Beauvaises regarding the methodology on how the acreage subject to the right of first refusal would be calculated. She was adamant that the 13 acres they were discussing was represented in the listing of the property for sale, and the parties had talked about it prior to her offer as being that portion of land. According to Ms. Stoodt, there did not seem to be any question as to the 13 acres of land about

15

which they were speaking. Ms. Stoodt was shown Exhibit A, attached to the purchase agreement and which does not depict any 13 or 13.1-acre tract, and she attempted to identify the boundaries of the portion of land on which she had a right of first refusal: the two roadways, the property she was purchasing as the northern boundary, and the "point behind the improvements on the east side." She acknowledged that the map attached to the purchase agreement did not show the improvements to the east, but insisted that the eastern boundary would have been behind the improvements on the back of the property, behind a workshop and shed. She further admitted that the eastern boundary of the property subject to her right of first refusal had never been surveyed.

On cross examination, Ms. Stoodt acknowledged that the MLS listing reflected a 13-acre tract and the drawing in Exhibit J2 referenced a 13.1-acre tract; however, she believed that 13.1 acres was the proper description for determining the acreage subject to her right of first refusal. She admitted that the once it was determined she was buying a 5.29-acre tracts instead of 4 acres, the language in the right of first refusal referencing 8 to 9 acres was no longer accurate and that she would have to change the 8 or 9 figure to specifically determine how much acreage was subject to her right of first refusal.

Ms. Stoodt testified she insisted on the right of first refusal to protect her home and her investment. She stated that she was never given an offer made to the Beauvaises for any portion of the 13 acres subject to her right of first refusal before the Beauvaises sold that property to third parties. Ms. Stoodt insisted that most of the properties that the Beauvaises sold to the Wallers and Mr. Slemmer were part of the property on which she had a right of first refusal. She stated that at one point she encountered Mr. Beauvais on the property with a surveyor and Mr. Beauvais told her they were having an additional survey done and she became

suspicious about a potential sale; however, Mr. Beauvais told her there was no contract. She stated that she asked Mr. Beauvais whether he had heard of any buyers who may be interested in purchasing the entire acreage and the home, and Mr. Beauvais told her that "all buyers are liars."

Ms. Stoodt also testified that in 2015, she decided to sell her property, as she was going to retire and wanted to move back to her home. She enlisted Ms. Rice as her agent to sell the home and 5.29-acre tract, and she and Ms. Rice had several discussions as to how the right of first refusal would be managed. Ms. Stoodt insisted that she was asked by Ms. Rice's associate to waive the right of first refusal, and she refused to. According to Ms. Stoodt, the right of first refusal was listed as an amenity because at the time she listed her property, the Beauvaises had not listed their property for sale, and she did not believe that she needed to exercise her option unless the Beauvaises had a purchaser for the property. When the Beauvaises also decided to sell their property, Ms. Stoodt admitted that she was willing to cooperate with them and agreed to work with them to sell her home and acreage as well as their property. She further admitted that her realtor asked her if she was interested in purchasing the rest of the acreage owned by the Beauvaises. Ms. Stoodt stated that she told the realtor she did not want to purchase additional acreage unless she needed to protect her investment. She denied telling the agent she did not want to purchase additional property.

Ms. Stoodt insisted that she would not have purchased the home and 5.29-acre tract and would not have made improvements thereon had she known her right of first refusal would not be honored. According to Ms. Stoodt, one of the reasons she wanted the right of first refusal was to prevent anyone from putting a mobile home on the adjoining property, which would have reduced the value of her property. However, she acknowledged that there were other manufactured homes

17

in the area across the street from her home. She also testified that she had not gotten any offers on her property so far, and answered "potentially" when asked whether the last thing she would want to do is add another tract to that property. Ms. Stoodt testified that she had "many" viewings of her home where the lack of additional land had been an issue and those potential buyers "walked away." She also testified that she recently had a buyer pass on her home because of the trailer on Mr. Slemmer's property. However, none of these interested buyers testified at trial. Although Ms. Stoodt had filed a notice of lis pendens in the mortgage records and Mr. Slemmer purchased his property without a title search, Ms. Stoodt did not file a lawsuit against Mr. Slemmer. She also did not sue Ms. Barrilleaux or the notary who prepared the Act of Sale without referencing the right of first refusal therein. She further admitted that at some time after Ms. Rice listed her property in 2015, the property appraised at $595,000.00.

In this appeal, Ms. Stoodt asserts that the trial court erred in concluding that her right of first refusal was unenforceable due to an inadequate legal description of the property subject to the right. She argues that the evidence demonstrated that the parties' clear intent was to provide her with a right of first of first refusal and contends that the parties adopted a methodology to identify the property subject to her right of first refusal, which is set forth in the purchase agreement and proven by admissible extrinsic evidence. Ms. Stoodt maintains that the property subject to her right of first refusal is identified in Exhibit J2 and comprises that acreage remaining from the original 13.1-acre tract after subtracting the 5.29-acre tract she purchased from the Beauvaises.

The Beauvaises counter that the trial court's judgment is correct because there was no "certain thing" upon which the alleged right of first refusal existed. They point out that there was no legal description or survey plat describing the

18

property subject to the alleged right contained in any document associated with the purchase agreement or sale of the property to Ms. Stoodt. The Beauvaises argue that the lack of an adequate property description makes the "thing" uncertain. They point out that Ms. Stoodt has admitted there is no survey setting forth the eastern boundary of the land subject to her alleged right of first refusal. The Beauvaises maintain that Ms. Stoodt's own testimony proved that there was a lack of clarity as to what property was subject to her right of first refusal, and they adamantly deny that there was any agreed upon "clear method" upon which to determine what property was subject to this alleged right. Because there was no "certain thing," the Beauvaises argue, there was no enforceable right of first refusal.

In this case, the trial court ultimately determined that Ms. Stoodt failed to meet her burden of establishing that she had an enforceable right of first refusal on property sold by the Beauvaises to third parties because the property subject to the right claimed was not sufficiently certain. In making this determination, the trial court obviously considered the absence of a clear legal description of the property subject to Ms. Stoodt's claimed right in Exhibit A to the purchase agreement, in the Act of Sale transferring the 5.29-acre tract to Ms. Stoodt, or in the survey prepared in connection with that transfer. Moreover, the record reflects that the testimony regarding the parties' understanding or lack thereof of what property was subject to the right of first refusal was conflicting. After thoroughly reviewing all of the documentary and testimonial evidence in this case, we cannot say that the trial court's conclusion that Ms. Stoodt failed to prove the existence of an enforceable right of first refusal is clearly wrong or manifestly erroneous.

**CONCLUSION**

For the foregoing reasons, the April 19, 2018 judgment is affirmed. All costs of this appeal are assessed to plaintiff, Amy L. Stoodt.

**AFFIRMED.**