**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2020 CA 0799R

KAYLA E'LANA WATSON

VERSUS

DANIEL CHRISTOPHER BANGUEL

Judgment rendered___**OCT 1 9 2022**___

\* \* \* \* \*

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. C692986, Sec. 22

The Honorable Timothy E. Kelley, Judge Presiding

\* \* \* \* \*

Kayla E'Lana Watson
Baton Rouge, Louisiana

Plaintiff/Appellee
In proper person


Beau James Brock
Lori E. Palmintier
Baton Rouge, Louisiana

Attorneys for Defendant/Appellant
Daniel Christopher Banguel

\* \* \* \* \*

BEFORE: McDONALD, HOLDRIDGE, AND PENZATO, JJ.

McDonald, J. dissents with reasons.

**HOLDRIDGE, J.**

Defendant, Daniel Christopher Banguel, appeals a judgment granting plaintiff, Kayla E'Lana Watson, a protective order. We affirm.

## BACKGROUND

On January 17, 2020, Ms. Watson filed a Petition for Protection From Stalking pursuant to La. R.S. 46:2171 against Mr. Banguel. In the petition, Ms. Watson asserted that Mr. Banguel engaged in the following behaviors constituting stalking: (1) uninvited presence at her workplace; (2) uninvited presence at other places; (3) made or sent telephone calls, texts, or emails to her; (4) sent messages to her by a third party; and (5) implied or threatened her with sexual assault. When asked to describe the circumstances of stalking, Ms. Watson alleged that on January 5, 2020, at approximately 7:50 p.m., she saw a silver Malibu with big rims and tinted windows outside of her place of work as she was preparing to leave for the evening. Ms. Watson stated that the car looked familiar to her. Ten minutes later, Ms. Watson ran to her car and drove off, then turned her vehicle around in an attempt to see the license plate of the Malibu, but was unable to do so because the Malibu had left and was travelling in the opposite direction. Ms. Watson then called the Baton Rouge Police Department, which advised her to obtain a restraining order. When asked to describe "past incidents" in the petition, Ms. Watson claimed that Mr. Banguel sexually assaulted her on October 17, 2019. She further stated that she was concerned that Mr. Banguel's presence at her place of employment was a retaliation or a means to frighten her for having filed charges with the New Orleans Police Department in connection with the alleged sexual assault.

On January 21, 2020, the trial court issued a temporary restraining order against Mr. Banguel, finding that the allegations of the petition constituted an

2

immediate and present danger of stalking. The temporary restraining order was effective through February 12, 2020.

On February 5, 2020, a hearing was held, during which Ms. Watson and Mr. Banguel testified. Following the conclusion of the trial, the trial court determined that Ms. Watson's testimony was credible and that she was entitled to a protective order. The protective order, issued by the trial court on February 5, 2020, pursuant to La. R.S. 46:2171 *et seq.*, ordered Mr. Banguel not to harass, stalk, follow, track, monitor, threaten, or attempt to contact Ms. Watson personally or through a third party by any means. Mr. Banguel was ordered to not go within 100 yards of Ms. Watson and to stay away from any place where Ms. Watson may be working. Mr. Banguel was ordered to pay court costs. The protective order was set to expire on February 5, 2021.

Mr. Banguel, who at the time was representing himself, filed a motion for a judgment notwithstanding the verdict or a new trial. Specifically, he asserted that Ms. Watson's stalking claim was premised on two incidents: (1) the October 17, 2019 alleged sexual assault and (2) the presence of an unidentified vehicle parked outside of her place of employment. Mr. Banguel asserted that Ms. Watson failed to provide any credible basis to authenticate to whom the vehicle belonged or who was in the vehicle. On February 12, 2020, the trial court denied the motion. Mr. Banguel filed a motion for a suspensive appeal. Initially, the trial court granted Mr. Banguel a devolutive appeal; however, on May 22, 2020, the trial court granted Mr. Banguel a suspensive appeal from the February 5, 2020 judgment.

In the appeal, a divided panel of this court dismissed the appeal as moot upon finding that the expiration of the protective order during the pendency of the appeal deprived this court of subject matter jurisdiction over the appeal. **Watson v. Banguel**, 2020-0799 (La. App. 1st Cir. 9/30/21), 2021 WL 4465839. The

3

Louisiana Supreme Court granted writs and remanded the matter to this court for a full consideration of the merits of the appeal. **Watson v. Banguel**, 2021-01793 (La. 2/8/22), 332 So.3d 632 (per curiam).

## DISCUSSION

Our review of the record in this case reveals the following: Ms. Watson testified that Mr. Banguel sexually assaulted her on October 17, 2019, when the two shared a motel room. Ms. Watson testified that she and Mr. Banguel, both law students, met in the summer of 2019, but denied having a romantic relationship with Mr. Banguel. In October 2019, Ms. Watson had scheduled an early flight out of New Orleans, and Mr. Banguel offered to drive her to New Orleans. They planned to stay the night in a hotel room, which Mr. Banguel obtained. Although it was undisputed that Mr. Banguel and Ms. Watson did share a bed on the evening of October 17, 2019, they gave differing accounts of what transpired that evening.

Ms. Watson testified that after they studied for a while, she took a shower and went to bed; later, Mr. Banguel got in the bed. Ms. Watson stated that she was awoken on three separate occasions. On the first, Ms. Watson felt Mr. Banguel touching and rubbing her; she told him to stop. A second time, Ms. Watson awoke when Mr. Banguel was touching her "intimate areas." Again, Ms. Watson told him to stop touching her. On the third occasion, Ms. Watson awoke and felt something inside of her vagina. Ms. Watson testified that Mr. Banguel ripped the jumpsuit she was wearing, and she got out of the bed, packed her things, and got a ride to the airport. Ms. Watson stated that she did not call police to report the alleged sexual assault that evening, but did report it when she arrived in Georgia, where a rape test was performed on her. Ms. Watson stated that she was unsure of the results of that test, but believed that the information was sent to the New Orleans

4

Police Department. She also indicated that she had been in contact with a detective in New Orleans who was investigating the alleged rape.

Ms. Watson testified that soon after she left the hotel, Mr. Banguel continued to telephone her, although she did not answer his calls. She stated that she texted him asking "What," to which he responded by asking why she was leaving the room that morning. Ms. Watson and Mr. Banguel offered into evidence text messages identified as having been exchanged by the two after Ms. Watson left the hotel room. In one text, Mr. Banguel asked Ms. Watson if she wanted something from the grocery, and she responded, "What!" Mr. Banguel then asked if she was "ok" and what was wrong; Ms. Watson replied "[l]eave me alone. You know what you did." Mr. Banguel then asked what he did, as he was confused. Ms. Watson responded that she did not think he would risk his life and profession like that, but she could see he did not care. Mr. Banguel then asked what she meant by that and what she was talking about, and inquired whether she made it to the airport. On the evening of October 24, 2019, Mr. Banguel sent Ms. Watson an electronic communication asking to speak to her.

Mr. Banguel testified that he and Ms. Watson did not have sex when they shared a bed in the hotel room, and he denied making any advances toward her. He testified that although he was supposed to drive Ms. Watson to the airport, she left the hotel room at 3:54 a.m. after discovering Mr. Banguel sat next to her ex-boyfriend in class without telling her. Mr. Banguel admitted sending Ms. Watson an Instagram message the following week asking to talk to her.

Regarding the incident in question, Ms. Watson testified that she worked at a warehouse near the Baton Rouge Metropolitan Airport. She stated that on January 5, 2020, a Sunday, at about 7:50 p.m., she looked outside of the door of her workplace and saw a silver Malibu with large rims and tinted windows sitting in

5

the parking lot in front of the warehouse. She stated that the car looked familiar to her and explained that the presence of the car made her nervous because there were no other cars in the parking lot and typically there was not much traffic in the area. Ms. Watson testified that she did recognize the vehicle as Mr. Banguel's vehicle. After seeing the vehicle, Ms. Watson ran to her vehicle and left, but ended up turning around, and as she turned around, the Malibu was leaving, and because they were both approaching the curb in opposite directions, she was unable to see the vehicle's license plate. Ms. Watson admitted that she could not see who was driving the Malibu at the time and could only say that she had seen that Malibu before. Ms. Watson testified that she called the police department and advised that someone was stalking her; she was told to go to the nearest police station. Ms. Watson then went to the police station, where she was informed that she would have to wait until the next day to file for a protective order.

Mr. Banguel denied going to Ms. Watson's place of employment on January 5, 2020. Mr. Banguel testified that he attended his daughter's birthday party that afternoon at a bowling alley, did not leave the party until 7:25 p.m. that evening, and drove his son to his home in Sherwood Forest Subdivision thereafter. Mr. Banguel offered a photo of him and his family bearing a date and time stamp of January 5, 2020 at 6:32 p.m. into evidence. He also denied ever having stalked Ms. Watson and acknowledged that he was never questioned by law enforcement regarding the alleged sexual assault of Ms. Watson.

Ms. Watson obtained a protective order pursuant to La. R.S. 46:2171, *et seq.*, known as the "Protection from Stalking Act." Under this Act, "stalking" means any act which would constitute the crime of stalking under La. R.S. 14:40.2. La. R.S. 46:2172. Louisiana Revised Statute 14:40.2 defines the crime of stalking as "the intentional and repeated following or harassing of another person that

6

would cause a reasonable person to feel alarmed or to suffer emotional distress." At a hearing on a protective order, the petitioner must prove the allegations by a preponderance of the evidence. **Head v. Robichaux**, 2018-0366 (La. App. 1st Cir. 11/2/18), 265 So.3d 813, 816; **Patterson v. Charles**, 2019-0333 (La. App. 4th Cir. 9/11/19), 282 So.3d 1075, 1083. Proof is sufficient to constitute a preponderance of the evidence, for the purposes of a protective order, when the entirety of the evidence, both direct and circumstantial, shows that the fact sought to be proved is more probable than not. **Head v. Robichaux**, 265 So.3d at 816.

A trial court's decision to issue a protective order is reversible only upon a showing of an abuse of discretion. **Head v. Robichaux**, 265 So.3d at 817. Moreover, the trial court, sitting as a trier of fact is in the best position to evaluate the demeanor of the witnesses, and its credibility determinations will not be overturned in the absence of manifest error. Id.; **Scott v. Hogan**, 2017-1716 (La. App. 1st Cir. 7/18/18), 255 So.3d 24, 31.

Mr. Banguel contends that the trial court failed to properly apply the legal definition of "stalking" as well as applicable and controlling jurisprudence in this case, which resulted in the trial court's erroneous issuance of the protective order. He insists that the trial court abused its discretion and committed manifest error in granting the protective order because the testimony and evidence adduced at trial failed to establish the legal elements of stalking. Mr. Banguel maintains that the single incident on January 5, 2020, does not meet the legal definition of stalking, and submits that the trial court abused its discretion in finding there were two or more instances of stalking after Ms. Watson told him to leave her alone. He asserts that there was no "pattern of conduct" instigated by him, even though he and Ms. Watson attended law school together. He points out that the only communications between the two were brief and occurred shortly after Ms. Watson left the hotel

7

room and once again the following week. Furthermore, Mr. Banguel argues, the evidence was insufficient to prove that he was the person operating the vehicle involved in the January 5, 2020 incident.

After reviewing the record in its entirety, we find the trial court did not abuse its discretion in granting Ms. Watson the protective order in this case. The trial court weighed the evidence and the credibility of the witnesses in finding that Ms. Watson proved the allegations of stalking by a preponderance of the evidence. Where, as in this case, two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. See **Stobart v. State, Department of Transportation and Development,** 617 So.2d 880, 882 (La. 1993). Therefore, the trial court's judgment granting the protective order is affirmed.

## CONCLUSION

For the foregoing reasons, the judgment appealed from is affirmed. All costs in this matter are assessed to appellant, Daniel Christopher Banguel.

**AFFIRMED.**

8

<u>**NOT DESIGNATED FOR PUBLICATION**</u>

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CA 0799R

KAYLA E'LANA WATSON

VERSUS

DANIEL CHRISTOPHER BANGUEL

McDonald, J., dissenting.

I respectfully dissent from the majority opinion as the statutes defining stalking, La. R.S. 14:40.2, require repetitive actions that I do not believe to be present in this case. The car that Ms. Watson saw outside of her place of employment was similar to Mr. Banguel's car, but she could not identify it as Mr. Banguel's car, nor could she identify Mr. Banguel as the driver of the car. Thus, Ms. Watson could not show that it was Mr. Banguel that was outside of her place of employment on January 5, 2020.